Peter R. Afrasiabi (Bar No. 193336)
pafrasiabi@onellp.com
**ONE LLP**
4000 MacArthur Boulevard
Each Tower, Suite 500
Newport Beach, CA 92660
Telephone: (949) 502-2870
Facsimile: (949) 258-5081

David Quinto (Bar No. 106232)
Joanna Ardalan (Bar No. 285384)
jardalan@onellp.com
**ONE LLP**
9301 Wilshire Boulevard
Penthouse Suite
Beverly Hills, CA 90210
Telephone: (310) 866-5157
Facsimile: (310) 943-2085

Attorneys for Plaintiffs
Backgrid USA, Inc., Splash News and Picture Agency, LLC, Xposure Photo Agency, Inc.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BACKGRID USA, INC., a California corporation; SPLASH NEWS AND PICTURE AGENCY, LLC, a Nevada limited liability company; XPOSURE PHOTO AGENCY INC., a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>ENTTECH MEDIA GROUP LLC. a Delaware limited liability company; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.: 2:20-cv-06803 RSWL (RAOx)<br>Hon. Ronald S. W. Lew<br><br>**PLAINTIFFS BACKGRID USA, INC.'S, SPLASH NEWS AND PICTURE AGENCY, LLC & XPOSURE PHOTO AGENCY INC.'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |

## I. STATEMENT OF FACTS

This Action stems from a dispute over Backgrid USA, Inc., Splash News and Picture Agency LLC and Xposure Photo Agency's (collectively the "Agencies"). copyright infringement claims against EntTech. EntTech owns, operates, and controls Paper Magazine and the Paper Magazine Instagram account (the "Account"). Declaration of Tom Florio in Support of Ex Parte Application ("Florio Decl."), ¶ 2. EntTech claims that the Paper Instagram Account is critical to "generat[ing] the advertising revenue that it needs to remain in operation." Florio Decl., ¶ 4.

Unfortunately, to make the Account more popular, EntTech resorted to infringing the Agencies' timely registered celebrity photographs to generate revenue (collectively the "Infringements"). In an attempt to vindicate their rights without use of judicial resources, the Agencies caused Digital Millennium Copyright Act Notifications ("DMCA Notices") to be issued to Instagram that were directed to EntTech's Infringements. *See* 17 U.S.C. § 512(c)(1), (3). In response, as required to maintain a safe harbor defense under the DMCA, Instagram took down the Infringements. Presumably, due to the number of takedown notifications that EntTech received, Instagram determined that it was a repeat infringer under 17 U.S.C. § 512(i), and, as such, terminated or suspended the Instagram account.

The Instagram Account was not taken down by the Agencies: The Account was taken down by Instagram that, it seems, just followed its own rules by prohibiting infringement and by disabling accounts that Instagram found to be repeat infringers.

Unhappy that the Paper Magazine Account was taken down by Instagram, EntTech filed suit (the "First Lawsuit") against the Agencies, Okularity and Jon Nicolini, who issued the takedown notices. *See EntTech v. Okularity, et al.,* 2:20-cv-06298 RGK (Ex).

2

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

EnTech also issued a perjurious counter-notification under 17 U.S.C. § 512(g)(3). The counter-notification claimed under penalty of perjury that the DMCA notices were a result of "mistake or misidentification," which they were not and for which Defendant had and still has no factual basis in support thereof. Dkt. 1, Ex. C.

Under 17 U.S.C. § 512(g)(2), if an internet service provider, such as Instagram, receives a counter-notification, it must promptly provide notice to the copyright holder that issued the DMCA notice and keep the infringements down ***unless the copyright holder files "an action" for injunctive relief within 10 business days.*** 17 U.S.C. § 512(g)(2)(B).[1]

The Agencies did just that: filed a suit for injunctive relief as was well within their right under 17 U.S.C. § 512(g)(2)(B). The Account stayed down. EnTech views this lawsuit as a barrier to regaining access to its Account and, in response, filed a motion to dismiss on the basis that the claims are compulsory counterclaims.[2]

In the First Lawsuit, responsive pleadings will not be due, ***if ever,*** for months to come. At the very least, EnTech will confront a Rule 12 motion to dismiss, anti-SLAPP motion, and potentially a Rule 11 motion that could dispose of all of EnTech's claims. The Agencies should not be required to file their claims as

---

[1] The DMCA expressly calls for the copyright holder to file an "action" for injunctive relief. Section 512 does not say that the claims should be filed as a counterclaim in a separate, extant dispute that raises a host of other torts and issues. It instead envisions a specific action on whether the counternotification submitted contained material misinformation. Nothing else.  That is a discreet action that must be adjudicated as a DMCA action. The DMCA nowhere envisions that issue being commingled with other claims.

[2] EnTech's theory that the claims are compulsive counterclaims is undermined by its own declaration. It explained EnTech's proposal that the parties "stipulate" (but not call the stipulation an injunction) to take down the works if the Agencies to agree to drop their claim for injunctive relief, which of course would afford the Agencies broader protection than the stipulation proposed. *See* Tauler Decl., ¶ 4. This proposal would allow the Agencies' claims to survive in the Second Lawsuit, which undercuts EnTech's position that the claims must be plead in the First Lawsuit. Moreover, a stipulation that acts as an injunction, but is not called an injunction is like calling a calf's tail a leg. It is not make it so, but effectively muddies the waters for a prevailing party determination down the line.

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

counterclaims when the First Lawsuit may not survive to the responsive pleading date.

Moreover, Judge Klausner already ruled that the First Lawsuit and this lawsuit are ***not related cases.*** Dkt. 10. As the issue of whether the lawsuits are even related is precluded by Judge Klausner's ruling, then whether the claims rise to the level of compulsory counterclaims is judicially estopped.

## II.     LEGAL STANDARD

Ex parte applications are for extraordinary relief, and will only be granted if (1) the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures and (2) the moving party is "without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Moreno v. SFX Enter., Inc*., cv 14-00880-RSWL-CWx. 2016 WL 6039216 (C.D. Cal. Jan. 8, 2016) (*citing Mission Power Eng'g Co. v. Continental Cas. Co*., 883 F. Supp. 488, 492 (C.D. Cal. 1995)).

## III.    ENTTECH IS RESPONSIBLE FOR THE TERMINATION OF THE ACCOUNT WHICH IS ITS JUSTIFICATION FOR SHORTENING THE TIME FOR ITS MOTION TO BE HEARD

EntTech infringed the Agencies copyrights. In an effort to enforce their copyrights, the Agencies issued DMCA notices. Instagram presumably took down the Account because EntTech was deemed a "repeat infringer" under Section 512(i). Section 512(i) requires internet service provider must "adopt[] and reasonably implement[] a [repeat infringer policy]" to keep the defense. If EntTech had not been deemed a repeat infringer by Instagram, then, all else equal, the Account would be alive and well. This emergency was created by EntTech's own wrong. *Ex parte* relief is not available under such circumstances.

/ / /

/ / /

/ / /

4

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

## IV. THE REQUESTED ORDER REQUIRING THE AGENCIES OPPOSE A MOTION TO DISMISS BEFORE THIS COURT CAN PRACTICALLY REVIEW THIS *EX PARTE* APPLICATION WOULD DENY THE AGENCIES DUE PROCESS

EntTech filed its ex parte application at 3:17 p.m. on August 6, allowing the Agencies until 3:17 p.m. on August 7 to oppose its request. The Application provides the Agencies no time to oppose EntTech's motion to dismiss. The Order assumes the Court would issue an order sometime between 3:17 p.m. and the end of its day and that sometime between that Order and midnight, the Agencies would be able to oppose Defendants' motion. Such a request is not practical and denies the Agencies due process.

## V. THE PRACTICAL EFFECT OF ENTTECH'S MOTION TO DISMISS DOES NOT CHANGE THE FACT THAT THE ACCOUNT WILL REMAIN DOWN

Regardless of whether the Agencies' Infringement claims are brought in this lawsuit or the First Lawsuit, the Account will remain down because there will be a claim for injunctive relief pending against EntTech. Therefore, the practical effect of moving this hearing date is nil.

## VI. CONCLUSION

The Agencies respectfully request that this ex parte be denied in full.

Dated: August 7, 2020

ONE LLP

By: /s/ Joanna Ardalan
Joanna Ardalan
Peter R. Afrasiabi

Attorneys for Plaintiffs
Backgrid USA, Inc.; Splash News and Picture Agency, LLC, Xposure Photo Agency, Inc.

5

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**