Robert Tauler (SBN 241964)
rtauler@taulersmith.com
Tauler Smith, LLP
626 Wilshire Boulevard, Suite 510
Los Angeles, California 90017
Tel: (310) 590-3927

Counsel for Defendant
ENTTECH MEDIA GROUP LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| BACKGRID USA, INC., et al.,<br><br>        Plaintiffs,<br><br>vs.<br><br>ENTTECH MEDIA GROUP LLC, et al.,<br><br>        Defendants. | CASE NO. 2:20-cv-06803-RSWL<br><br>Assigned to Hon. Ronald S.W. Lew<br>Courtroom ___ [TBD]<br><br>**REPLY IN SUPPORT OF *EX PARTE* APPLICATION [14] TO SHORTEN TIME FOR BRIEFING AND HEARING ON MOTION TO DISMISS THE COMPLAINT [11]**<br><br>[Civil L.R. 7-19]<br><br>Hearing Date:   None set<br>Time:   None set<br>Place:   None set<br><br>Hon. RONALD S.W. LEW |

Plaintiffs in their Opposition (Dkt. 16) do not oppose shortening the motion filing time under Civil L. R. 7-3 to August 4, 2020.  Shortening the time for briefing and hearing the Motion to Dismiss the Complaint (Dkt. 11) is also warranted, because ENTTech and its employees will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures, and because ENTTech is without fault in creating the crisis that requires *ex parte* relief.  *See Mission Power Eng'g Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).  Citing no evidence, Plaintiffs argue that ENTTech itself is responsible for the "termination" of its Instagram account, and alternatively, that the "practical effect" of moving the hearing date and promptly granting dismissal of the Complaint would be "nil."  *See* Opposition at 4, 5.  Citing no law, Plaintiffs argue that "whether the claims rise to the level of compulsory counterclaims is judicially estopped" by Judge Klausner's decision to decline a related-case transfer, and alternatively, that expediting the motion to dismiss would deny them "due process."  *Ibid.*  All of these arguments are baseless.

*          *          *

Plaintiffs offer zero evidence even ***suggesting*** that "EntTech infringed the Agencies' copyrights" (as asserted in the Opposition at 4), and no less importantly, zero evidence that ENTTech had any opportunity to avoid Instagram's freeze.  This is because Instagram's freeze was based on Plaintiffs' DMCA notices merely ***alleging*** infringement – and because, prior to the Instagram account being disabled on July 8, 2020, ENTTech had "never received notice of any copyright dispute."  *See* Florio Decl., ¶ 3 (Dkt. 14-2).  Thus, ENTTech is absolutely ***not*** at fault in creating the crisis.  Instead, creating the crisis was Plaintiffs' own objective – which is evidenced now by their counsel's efforts to leverage the Instagram freeze during the recent meet-and-confer process, in seeking to avoid actually proving the unfounded infringement allegations.  *See* Tauler Decl. (Dkt. 14-1), ¶¶ 5, 9.  Without ever producing any evidence to support those allegations, Plaintiffs' counsel

demanded "that EntTech stipulate to infringement," dismiss the first filed action, and stipulate to arbitration. *See* Tauler Decl., Exh. E (Dkt. 14-1 at 16). Then, and only then, would Plaintiffs "agree to withdraw our request for injunctive relief and the account can go back up." *Ibid*.

Moreover, expediting the motion to dismiss this Second Case without prejudice (as requested by ENTTech) could not possibly deny anyone due process – because, there is no conceivable property or liberty interest that Plaintiffs would lose as a result. The only result would be Instagram lifting the freeze, under Instagram's own internal practice that they "will restore or cease disabling access to the content at issue within 14 business days from now [*i.e.*, 14 business days after July 15, 2020], unless we receive notice that the reporting party has filed an action seeking a court order to restrain you …." *See* Florio Decl., Exh. A (Dkt. 14-2 at 5). Plaintiffs do not (and cannot) assert that Instagram's freeze affords them any protectible interests, for due process purposes. Critically, there is also **nothing in the DMCA** gives Plaintiffs the right to hold a social media account hostage by ignoring Rule 13(a) – not even by filing an "action" against ENTTech under 17 U.S.C. § 512(g). Instead, at most, § 512(g) merely affords Instagram a limited immunity from liability, if ENTTech were to sue Instagram for disabling access to the particular images that are alleged to infringe Plaintiffs' purported copyrights.[1]

---

[1] Section 512(g) provides:

**(g) Replacement of removed or disabled material and limitation on other liability.**

    **(1)** No liability for taking down generally. Subject to paragraph (2), a service provider shall not be liable to any person for any claim based on the service provider's good faith disabling of access to, or removal of, material or activity claimed to be infringing or based on facts or circumstances from which infringing activity is apparent, regardless of whether the material or activity is ultimately determined to be infringing.

    **(2)** Exception. Paragraph (1) shall not apply … unless the service provider—

    …

1 Copyright claimants also can (and do) file counterclaims under the DMCA, notwithstanding the reference in § 512(g)(2)(C)'s liability protections to the filing of "an action." *But see* Opposition at 3 n.1.  For instance, in *Equals Three, LLC v. Jukin Media, Inc.*, 139 F. Supp. 3d 1094 (C.D. Cal. 2015), the plaintiff (like ENTTech) "sued … for a declaratory judgment and for relief under § 512(f) … (which prohibits fraudulent use of DMCA takedown notices)." *Id.* at 1098.  In *Equals Three*, the defendant readily counterclaimed, asserting that plaintiff "infringed nineteen of its copyrights." *Ibid*.

    The Plaintiffs' claims here in the Second Case are all compulsory counterclaims in the First Case, under Rule 13(a), and they are all more than sufficiently related to invoke the first-to-file rule.  *See* Dkt. 11 at 2-3 (explaining why).  In that regard, the § 512(f) claim that ENTTech alleged as Count One in the First Case against all the same three defendants who improperly sued here in the Second Case is no different from *Equals Three*.  *See* RJN, Exh. 1 (Dkt. 14-3).  Furthermore, expediting ENTTech's motion seeking dismissal on those grounds in the Second Case could not possibly prejudice Plaintiffs, because Plaintiffs have no colorable basis to disagree – since, the Opposition explains none – and because Plaintiffs can still launch all of their planned attacks against ENTTech's own complaint while (at the same time) pleading and pursuing counterclaims in the First Case.  *See* Dkt. 16 at 3 ("EntTech will confront a Rule 12 motion to dismiss, anti-SLAPP motion, and potentially a Rule 11 motion that could dispose of all of

---

**(C)** replaces the removed material and ceases disabling access to it not less than 10, nor more than 14, business days following receipt of the counter notice, unless its designated agent first receives notice from the person who submitted the notification under subsection (c)(1)(C) that such person has filed an action seeking a court order to restrain the subscriber from engaging in infringing activity relating to the material on the service provider's system or network.

17 U.S.C. § 512(g).

3

EntTech's claims"). Each and every one of those attacks can be made *after* filing an answer containing counterclaims in the First Case. *See* Fed. R. Civ. P. 12(h).

Finally, it seems obvious that no judicial estoppel or any other preclusion results from Judge Klausner's decision to decline a related-case transfer. *See* Dkt. 10. Judicial estoppel would require some inconsistent assertion by ENTTech – but obviously, ENTTech has never asserted that Plaintiffs' claims are unrelated. *See, e.g., Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (judicial estoppel "precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position."). And collateral estoppel (also known as issue preclusion) would require a final judgment in the First Case, which obviously has not occurred. *See Miesegaes v. Dep't of State Hosps.*, 2020 U.S. Dist. LEXIS 140803, *1-2 (C.D. Cal. Aug. 6, 2020) ("[c]ollateral estoppel does not apply to the Court's prior screening order because the screening order is not a final judgment"; *citing Eilrich v. Remas*, 839 F.2d 630, 632 (9th Cir. 1988)).

\* \* \*

Because the Plaintiffs here neglected to file any counterclaims in the First Case seeking to restrain ENTTech's alleged infringement within 14 business days after Instagram's self-imposed deadline of July 15, 2020, the practical effect of dismissing the improper Complaint here is the opposite of "nil"; the practical effect would be to lift the freeze that Instagram imposed, so that ENTTech operate its business while it defends against Plaintiffs' claims. This is not actually disputed, anywhere in the Opposition. Doing so is necessary to prevent irreparable harm to ENTTech and its employees – which (again) nothing in the Opposition makes any effort to dispute. Therefore, *ex parte* relief should be granted.

4

**REPLY IN SUPPORT OF *EX PARTE* APPLICATION**

Respectfully submitted,

Dated: August 9, 2020          **TAULER SMITH, LLP**

By: /s/ Robert Tauler
         Robert Tauler

Counsel Defendant
ENTTECH MEDIA GROUP LLC

# CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2020, copies of the foregoing document were served by the CM/ECF system to all counsel of record in this action.

Dated:  August 9, 2020                    **TAULER SMITH, LLP**

                                          By: /s/ Robert Tauler
                                              Robert Tauler

                                          Counsel for Defendant
                                          ENTTECH MEDIA GROUP LLC

**REPLY IN SUPPORT OF *EX PARTE* APPLICATION**