Robert Tauler (SBN 241964)
rtauler@taulersmith.com
Tauler Smith, LLP
626 Wilshire Boulevard, Suite 510
Los Angeles, California 90017
Tel: (310) 590-3927

Counsel for Defendant
ENTTECH MEDIA GROUP LLC

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| BACKGRID USA, INC., et al.,<br><br>　　　　　Plaintiffs,<br><br>vs.<br><br>ENTTECH MEDIA GROUP LLC, et al.,<br><br>　　　　　Defendants. | CASE NO. 2:20-cv-06803-RSWL<br><br>Assigned to Hon. Ronald S.W. Lew<br>Courtroom ___ [TBA]<br><br>**REPLY IN SUPPORT OF MOTION [11] TO DISMISS THE COMPLAINT**<br><br>[Fed. R. Civ. P. 13(a)]<br><br>Hearing Date:　Vacated<br>Time:　　　　　n/a<br>Place:　　　　　n/a<br><br>Hon. RONALD S.W. LEW |

**REPLY IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

I. FACTS .................................................................................................................. 1

II. ARGUMENT ...................................................................................................... 4

    A. Dismissal Is Warranted, Because Plaintiffs Would Not Be Prejudiced. ........ 4

    B. The Two Cases Are Logically, Legally and Factually Related. ..................... 9

III. CONCLUSION ................................................................................................ 13

CERTIFICATE OF SERVICE .............................................................................. 14

# TABLE OF AUTHORITIES

Cases

*Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622 (9th Cir. 1991) ........................ 9

*Amaretto Ranch Breedables v. Ozimals, Inc.*, 97 U.S.P.Q.2d (BNA) 1664, Copy. L. Rep. (CCH) ¶ 30,018 (N.D. Cal. Dec. 10, 2010) .............................. 2, 6

*Askins v. United States Dep't of Homeland Sec.*, 899 F.3d 1035 (9th Cir. 2018) ............................................................................................ 12

*Eilrich v. Remas*, 839 F.2d 630 (9th Cir. 1988) ...................................................... 12

*Equals Three, LLC v. Jukin Media, Inc.*, 139 F. Supp. 3d 1094 (C.D. Cal. 2015) ............................................................................................... 7

*Guthy-Renker Fitness L.L.C. v. Icon Health & Fitness, Inc.*, 179 F.R.D. 264 (C.D. Cal. 1998) ............................................................................................... 2

*Hall v. Hall*, 584 U.S. ___, 138 S. Ct. 1118, 200 L. Ed. 2d 399 (2018) .................. 8

*Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778 (9th Cir. 2001) ............... 12

*Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*, 544 F. Supp. 2d 949 (N.D. Cal. 2008) ................................................................................................ 1

*Johnson v. City of Shelby*, 574 U.S. 10, 135 S. Ct. 346, 190 L. Ed. 2d 309 (2014) ........................................................................................................ 9

*Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 53 S. Ct. 721, 77 L. Ed. 1331 (1933) ........................................................................................ 8

*Mellon Bank, N.A. v. Ternisky*, 999 F.2d 791 (4th Cir. 1993) ................................ 8

*Miesegaes v. Dep't of State Hosps.*, 2020 U.S. Dist. LEXIS 140803 (C.D. Cal. Aug. 6, 2020) ...................................................................................... 12

*Nakash v. Marciano*, 882 F.2d 1411 (9th Cir. 1989) ......................................... 4, 11

*Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93 (9th Cir. 1982) ...................... 7

*Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246 (9th Cir. 1987) ................... 9

*Riviera Travel & Tour, Inc. v. Novokshonov*, 2012 U.S. Dist. LEXIS 196497 (C.D. Cal. Aug. 23, 2012) ................................................................................. 8

*Ruckus Wireless, Inc. v. Harris Corp.*, 2012 U.S. Dist. LEXIS 22336 (N.D. Cal. Feb. 22, 2012) .................................................................................. 7

*Static Control Components, Inc. v. Dallas Semiconductor Corp.*, 69 U.S.P.Q.2d (BNA) 1203, 56 Fed. R. Serv. 3d (Callaghan) 307, Copy. L. Rep. (CCH) ¶ 28,656 (M.D.N.C. July 9, 2003) ....................................................... 10

**REPLY IN SUPPORT OF MOTION TO DISMISS**

*Voxer, Inc. v. Facebook, Inc.*, 2020 U.S.P.Q.2d (BNA) 10690 (W.D. Tex. June 22, 2020) .................................................................................................. 11

Statutes

17 U.S.C. § 512(f) ............................................................................................. 2, 3, 6

17 U.S.C. § 512(g) ................................................................................................ 5, 6

17 U.S.C. § 512(g)(2)(B) .......................................................................................... 6

17 U.S.C. § 512(g)(2)(C) ...................................................................................... 5, 6

28 U.S.C. § 1927 ...................................................................................................... 9

Rules

Fed. R. Civ. P. 10(c) .............................................................................................. 10

Fed. R. Civ. P. 11 ................................................................................................. 8, 9

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 9

Fed. R. Civ. P. 13(a) .................................................................................. 1, 4, 8, 13

Fed. R. Civ. P. 13(a)(1) ............................................................................................ 8

Fed. R. Civ. P. 13(a)(2)(A) ...................................................................................... 1

Fed. R. Civ. P. 42(a) ................................................................................................ 8

Fed. R. Evid. 201 ................................................................................................. 2, 7

C.D. Cal. Civ. L.R. 83-1.3.1 .................................................................................. 13

As shown in the Motion (Dkt. 11), the Complaint in this action against ENTTech should be dismissed, under Rule 13(a) of the Fed. R. Civ. P. and the first-to-file rule. Plaintiffs in their Opposition (Dkt. 20) do not disagree – because, tellingly, they do not address the first-to-file rule whatsoever. None of their arguments has any merit, not under Rule 13(a) nor under the first-to-file rule.

## I.   FACTS

The facts stated in the Motion are all undisputed, and indisputable. All three of the plaintiffs here in the Second Case were already named as defendants in the First Case – namely, BackGrid USA, Inc.; Splash News and Picture Agency, LLC; and Xposure Photo Agency Inc. In other words, the parties in both cases are substantially the same, as required to invoke the first-to-file rule, even though two of the defendants in the First Case (namely, Okularity, Inc. and Jon Nicolini) did not join as plaintiffs here. *See Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*, 544 F. Supp. 2d 949, 959 (N.D. Cal. 2008) ("The rule is satisfied if some [of] the parties in one matter are also in the other matter, regardless of whether there are additional unmatched parties in one or both matters"). All three of the plaintiffs here would also be required to plead any compulsory counterclaims in the First Case, precisely because all three of them are named as defendants there – and because this Second Case was not yet pending when ENTTech filed first. *Cf.* Fed. R. Civ. P. 13(a)(2)(A) (creating an exception to the compulsory counterclaim rule if, "when the action was commenced, the claim was the subject of another pending action").

As the Complaint here in this Second Case also alleges – and thereby, concedes – "Defendant has filed a related lawsuit in the Central District of California, *EntTech Media Group LLC v. Okularity, Inc., et al.*, 2:20-cv-06298." *See* Dkt. 1, ¶ 2. Necessarily, this means that the First Case was (indeed) filed first. "In making this determination" under the first-to-file rule, "the court should employ the date on which the original, rather than the amended, complaint was

filed." *Guthy-Renker Fitness L.L.C. v. Icon Health & Fitness, Inc.*, 179 F.R.D. 264, 270 (C.D. Cal. 1998) (citation omitted).[1] Moreover, "[a] lawsuit raising a section 512(f) claim" under the DMCA – such as the First Case filed by ENTTech, challenging the takedown notifications – does not lose its "first" filed priority, unless the alleged copyright owners themselves "first (or simultaneously) fil[ed] an infringement lawsuit" at the time of their DMCA notices. *See Amaretto Ranch Breedables v. Ozimals, Inc.*, 97 U.S.P.Q.2d (BNA) 1664, 1666, Copy. L. Rep. (CCH) ¶ 30,018 (N.D. Cal. Dec. 10, 2010) (declining to dismiss the first case). Here, as nobody disputes, ENTTech filed its § 512(f) claim on July 15, 2020. *See* Count I of the complaint in the First Case (Dkt. 14-3, Exhibit 1, ¶¶ 35-43) ("Plaintiff [ENTTech] seeks damages and attorneys' fees for Defendants bad-faith conduct under 17 U.S.C. §512(f)"). Indisputably, that was before the copyright infringement and related DMCA claims against ENTTech were filed in the Second Case on July 29, 2020. *See* Dkt. 1. And the three plaintiffs here in the Second Case concede (as they must) that they never previously filed any other lawsuit against ENTTech; instead, they say, they merely "attempt[ed] to vindicate their rights without use of judicial resources" by issuing their DMCA notifications. *See* Opposition at 3.[2]

The two cases are indeed related, because they both involve the same "take-down" notifications and counter-notifications under the DMCA. On August 10, 2020, ENNTech filed an amended complaint in the First Case – which again contains exactly the same DMCA allegations under § 512(f) as in the original complaint of July 15, 2020. *See* Exhibit A, *infra*, ¶¶ 35-43. As the Plaintiffs here characterize the new amendment, it merely "cut[s] out [ENTTech's] state law

---

[1] ENTTech respectfully requests judicial notice of its First Amended Complaint of August 10, 2020 (Exhibit A, *infra*) as filed in the First Case. *See* Fed. R. Evid. 201 and the authorities cited by the Court in Dkt. 19 at 4 n.2.

[2] The Court here in this Second Case has taken judicial notice of ENTTech's original complaint filing of July 15, 2020 in the First Case. *See* Dkt. 19 at 4 n.2.

2
**REPLY IN SUPPORT OF MOTION TO DISMISS**

claims, leaving only a RICO claim and a misrepresentation claim under 512(f)" of the DMCA. *See* Opposition at 5. Yet, inexplicably, Plaintiffs now contend that this Second Case "involves a different factual basis than Defendant's claims, as they [*i.e.*, the claims in the First Case] contest the ***Agencies'*** DMCA takedown notifications on a different factual basis." Opposition at 2 (emphasis in original). This is literal nonsense. The "Photo Agencies" (as that term is defined on page 2 of the Opposition) are the same three Plaintiffs in this Second Case who are also named as three of the defendants in the First Case by ENTTech – namely, BackGrid USA, Splash News and Picture Agency, and Xposure Photo Agency. Here in this Second Case, those same "Agencies" now allege that ENTTech's ***counter***-notifications under the DMCA – in response to their own ***notifications*** that ENTTech itself challenges in the First Case – were "perjurious." Opposition at 4 (citing the Agencies' own Complaint, ¶¶ 18-19 & Exh. C). ENTTech's counter-notifications involve the same disputed copyright claims – namely, the infringements now alleged by the Agencies in their First Claim for Relief here (*see* Dkt. 1, ¶¶ 21-30) – over the same photographs posted on the Instagram account of ENTTech's *Paper* magazine. This is obvious (and the Opposition is obviously wrong), because Exhibit C to the Complaint here is a collection of emails that contain ***both*** the DMCA notifications from the Agencies ***and*** the counter-notifications by ENTTech's counsel in the First Case, namely Robert Tauler, Esq. *See* Dkt. 1-7.

As Plaintiffs also now ignore (but do not dispute), their Complaint here expressly alleges that ENTTech's own allegations in the First Case (attacking the Agencies' notifications under the DMCA) assertedly are incorrect. *See* Dkt. 1, ¶¶ 17-20. The recent amendment of ENTTech's complaint in the First Case does not alter those allegations against the Agencies. *See* Exhibit A, *infra*. It is therefore evident that the two cases are both logically and factually related – notwithstanding that the Complaint here also includes exhibits (cited in the Opposition at 7) which

allegedly show additional instances of purported copyright infringement (on other platforms, such as Twitter) that were not the subject of any DMCA notices or counter-notices. *See* Opposition at 7. The first-to-file rule does not require identical issues or "exact parallelism" of every claim or issue. *See Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989) ("exact parallelism does not exist, but it … is enough if the two proceedings are 'substantially similar' "; citation omitted). The claims are substantially similar between the two cases, not only because the parties are mostly the same, but also because the allegations surrounding the Instagram DMCA notifications and counter-notifications overlap one another exactly – which is also why all of Plaintiffs' claims involving ENNTech's use of Instagram are compulsory counterclaims under Rule 13(a).

Furthermore, ENTTech has never "tacitly admitted that the Agencies' claims are not compulsory counterclaims," as asserted by Plaintiffs. *But see* Opposition at 3 (citing Exhibit A to the Declaration of Joanna Ardalan, Dkt. 20-2). Rather, it was Plaintiffs' own counsel (Ms. Ardalan) who proposed that "EntTech would allow the second lawsuit to proceed without objection as to whether the claims are compulsory." *See* Dkt. 20-2 at 3 (the Ardalan email of Aug. 3, 2020 at 4:14 p.m.). Needless to add, none of ENTTech's proposals for restoring access to its *Paper* magazine Instagram account were ever accepted by Plaintiffs – not even though each of those proposals would have stopped ENTTech's alleged infringement of their purported copyrights, by removing the disputed Instagram posts pending a litigated resolution, and without prejudice to any future claim for injunctive relief. *See* Dkt. 20-2 at 3.

## II. ARGUMENT

### A. Dismissal Is Warranted, Because Plaintiffs Would Not Be Prejudiced.

Plaintiffs contend that dismissing the Complaint would "unduly" prejudice them, because their Complaint (itself) alleges that "EntTech is a repeat and notorious infringer with an extremely popular Instagram Account." Opposition at

4

**REPLY IN SUPPORT OF MOTION TO DISMISS**

8 (citing ¶¶ 12-14 of Dkt. 1 and its attached Exhibits B-1, B-2 and B-3). Dismissal would therefore cause them prejudice, Plaintiffs say, because re-filing their claims as counterclaims in the First Case "will not meet the timing requirements under 17 U.S.C. § 512(g)(2)(C), which *requires* that suit for injunctive relief be filed within 10 business days from the date of the counter-notification." *Ibid.* (emphasis in original). This is incorrect.

Literally nothing in § 512(g)(2)(C) imposes any timing requirement for Plaintiffs to file a suit for injunctive relief. Therefore, Plaintiffs may readily assert a counterclaim seeking injunctive relief in the First Case now, or any time they choose. Section 512(g) merely affords *Instagram* a limited immunity from liability – if ENTTech were to sue Instagram for disabling access – based partly upon the timing of an injunctive filing by Plaintiffs. Section 512(g) provides:

> **(g) Replacement of removed or disabled material and limitation on other liability.**
>
> **(1)** No liability for taking down generally. Subject to paragraph (2), a service provider shall not be liable to any person for any claim based on the service provider's good faith disabling of access to, or removal of, material or activity claimed to be infringing or based on facts or circumstances from which infringing activity is apparent, regardless of whether the material or activity is ultimately determined to be infringing.
>
> **(2)** Exception. Paragraph (1) shall not apply … unless the service provider—
>
> **(A)** takes reasonable steps promptly to notify the subscriber that it has removed or disabled access to the material;
>
> **(B)** upon receipt of a counter notification described in paragraph (3), promptly provides the person who provided the notification under subsection (c)(1)(C) with a copy of the counter notification, and informs that person that it will replace the removed material or cease disabling access to it in 10 business days; and
>
> **(C)** replaces the removed material and ceases disabling access to it not less than 10, nor more than 14, business days following receipt of the counter notice, unless its designated agent first receives notice from the person who submitted the notification under subsection (c)(1)(C) that such person has filed an action seeking a court order to restrain the subscriber from engaging in

5
**REPLY IN SUPPORT OF MOTION TO DISMISS**

infringing activity relating to the material on the service provider's system or network.

17 U.S.C. § 512(g). Thus, by dismissing the Complaint in this action, the only immediate result would be to terminate Instagram's immunity from potential liability to ENTTech, if access to the *Paper* magazine account were not restored. And even though this probably means (practically speaking) that Instagram **will** restore ENNTech's account access, this too would not prejudice Plaintiffs – precisely because literally nothing in the DMCA's "legislative trade-off" (*see* Opposition at 9) affords Plaintiffs any right to disable ENTTech's account with Instagram, nor even the power to force Instagram into removing allegedly copyrighted materials. Plaintiffs simply misrepresent the statute by contending otherwise. *See* Opposition at 4 (misrepresenting § 512(g)(2)(B)). Plaintiffs would suffer no prejudice, because they could readily pursue a temporary restraining order or injunctive relief in the First Case to stop ENTTech from accessing the Instagram account, if such relief were warranted (which it is not).

Importantly, ENTTech had every right to file the First Case under § 512(f) of the DMCA, without waiting for Plaintiffs to sue for copyright infringement and/or to attack its own counter-notifications to Instagram under § 512(f). *See Amaretto Ranch*, 97 U.S.P.Q.2d at 1666.[3] Thus, Plaintiffs are wrong in contending that ENTTech supposedly is moving to dismiss the Second Case "to evade the

---

[3] Section 512(f) provides:

**(f) Misrepresentations.—** Any person who knowingly materially misrepresents under this section—

**(1)** that material or activity is infringing, or

**(2)** that material or activity was removed or disabled by mistake or misidentification,

shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer, by any copyright owner or copyright owner's authorized licensee, or by a service provider, who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing, or in replacing the removed material or ceasing to disable access to it.

DMCA." *See* Opposition at 8 (in heading V). Copyright claimants (such as the Agencies) also can (and do) file counterclaims in response to DMCA claims under § 512(f), notwithstanding the reference in § 512(g)(2)(C)'s liability protections to the filing of "an action." *But see* Opposition at 4 n.2. For instance, in *Equals Three, LLC v. Jukin Media, Inc.*, 139 F. Supp. 3d 1094 (C.D. Cal. 2015), the plaintiff (like ENTTech) "sued … for relief under § 512(f) … (which prohibits fraudulent use of DMCA takedown notices)." *Id.* at 1098. The defendant readily counterclaimed, asserting that plaintiff "infringed nineteen of its copyrights." *Ibid*. In short, Plaintiffs are also wrong when they contend that "[t]he DMCA nowhere envisions that issue being commingled with other claims." Opposition at 4 n.2. In fact, the Complaint in this action *itself* commingles issues of pure copyright infringement (in the First Claim for Relief) with DMCA notification issues (in the Second and Third Claims for Relief). This is understandable, because the DMCA says nothing whatsoever about mingling or not mingling claims. And, it makes no difference when any of the Agencies actually were *served* the summons in the First Case. *See Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 96 (9th Cir. 1982) (under the first-to-file rule, "[a] federal action is commenced by the ***filing*** of the complaint, not by service of process") (emphasis added). *But see* Ardalan Decl., ¶ 2 & Exhibit A (Dkt. 20-1) (disputing the service of process on Splash News).[4]

Plaintiffs do not disagree with (or even discuss) the principle that "[o]nce a Court determines 'that an action on its docket involves a claim that should be a compulsory counterclaim in another pending federal suit, it will stay its own proceedings or will dismiss the claim with leave to plead it in the prior action.' " *See Ruckus Wireless, Inc. v. Harris Corp.*, 2012 U.S. Dist. LEXIS 22336, *8 (N.D. Cal. Feb. 22, 2012) (citation omitted). But, "[i]nstead of dismissing, the Photo

---

[4] ENTTech respectfully requests judicial notice of the sworn Proof of Service for Splash News (Exhibit B, *infra*) as filed in the First Case. *See* Fed. R. Evid. 201 and the authorities cited by the Court in Dkt. 19 at 4 n.2.

7
**REPLY IN SUPPORT OF MOTION TO DISMISS**

Agencies request consolidation and/or transfer to avoid unfair prejudice." Opposition at 10. Since there would not be any unfair prejudice, this request is pointless. Furthermore, even if the two cases were consolidated, dismissal of the Second Case would still be appropriate. Contrary to Plaintiffs' apparent misunderstanding, consolidating actions under Rule 42(a) does not combine two actions into one. *See Hall v. Hall*, 584 U.S. \_\_\_, \_\_\_, 138 S. Ct. 1118, 1125-30, 200 L. Ed. 2d 399 (2018) (explaining Rule 42(a) and its historical context). "[C]onsolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause …." *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 496-97, 53 S. Ct. 721, 77 L. Ed. 1331 (1933). For instance, the two cases were (effectively) consolidated in *Riviera Travel & Tour, Inc. v. Novokshonov*, 2012 U.S. Dist. LEXIS 196497 (C.D. Cal. Aug. 23, 2012) – in other words, the cases were jointly administered – in the same joint order that dismissed one of them (under the Rule 13(a) and the first-to-file rule) while granting leave to plead counterclaims in the other one. *Ibid.* In short, by offering consolidation as an alternative to dismissal, Plaintiffs are offering a false choice. Consolidation *vel non* has no impact on dismissal *vel non*.

  The Agency plaintiffs here also contend that the First Case may be dismissed itself, without the need for them to file an answer there containing any counterclaims. Under Rule 13(a)(1), counterclaims are not required unless and until filing "[a] pleading" – which is a requirement that Plaintiffs contend may never "vest," because they may (instead) succeed in filing "at least, a motion to dismiss for failure to state a claim, and potentially a Rule 11 motion" in the First Case. *See* Opposition at 2. But nothing in *Mellon Bank, N.A. v. Ternisky*, 999 F.2d 791 (4th Cir. 1993) (cited by Plaintiffs) even suggests that dismissal should be withheld or denied, simply because a plaintiff in a second action still "[has] time to file its counterclaim" in an earlier-filed first action, as Plaintiffs incorrectly assert. *See* Opposition at 9. Concededly, "where the first-filed action presents a

*likelihood* of dismissal, the second-filed suit should be stayed, rather than dismissed" under the first-to-file rule. *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 629 (9th Cir. 1991) (citation omitted; emphasis added). Here, however, nothing in the Opposition establishes (or even tries to establish) that any such likelihood of dismissal exists. No motion to dismiss the First Case has even been filed, and nothing in the Opposition even attempts to demonstrate that such a motion *could* be filed – at least, not without (itself) violating Rule 11 and/or the prohibition in 28 U.S.C. § 1927 against vexatious multiplication of proceedings. Such a motion could *not* be filed. Even if the Agency plaintiffs were correct in their own allegations that ENTTech's are incorrect (*see* Dkt. 1, ¶¶ 17-20), such a factual dispute could not possibly justify dismissal for failure to state a claim, under Rule 12(b)(6). Rather, their very dispute of those facts is (itself) conclusive in showing that ENTTech's allegations have "informed" the Agencies of the factual basis for its claims in the First Case. *See Johnson v. City of Shelby*, 574 U.S. 10, 12, 135 S. Ct. 346, 190 L. Ed. 2d 309 (2014) (per curiam). Having done so, ENTTech is "required to do no more to stave off threshold dismissal" under the *Twombly / Iqbal* standards for failure to state a claim. *Ibid*. That explains why, in fact, no motion to dismiss has been filed in the First Case.

**B.   The Two Cases Are Logically, Legally and Factually Related.**

The obvious logical relationships make the claims here in the Second Case compulsory in the First Case. *See Pochiro v. Prudential Ins. Co. of Am.,* 827 F.2d 1246, 1249 (9th Cir. 1987). As the Agency plaintiffs do not dispute (nor acknowledge), their own Complaint here in the Second Case alleges that all of their "actions were lawful and prescribed by the DMCA" (*see* Dkt. 1, ¶ 20) – while the exact opposite is being alleged against them in the First Case. *See* Dkt. 14-3, Exhibit 1, ¶ 12; *see also* Exhibit A, *infra* ¶ 12. Nothing could be *more* logically connected than that – which is exactly the reason why Exhibit C to the Complaint here (Dkt. 1-7) includes the ENTTech counter-notices together with the same

Agency notices that the First Case claims were unlawful. (Under Rule 10(c), that makes all the notices and counter-notices part of the Complaint "for all purposes.") The Complaint here in the Second Case alleges that ENTTech's counter-notifications to Instagram under the DMCA supposedly were false (*see* Dkt. 1, ¶¶ 54, 58); while, in the First Case, ENTTech itself alleges that their own DMCA notifications – over the very same photographs, posted on the very same Instagram account – were false (*see* Exhibit A, *infra* ¶ 37; *see also* Dkt. 14-3, Exhibit 1 at ¶ 37).

"Courts … have routinely found copyright misuse … to be compulsory counterclaims to previously filed copyright infringement claims." *Static Control Components, Inc. v. Dallas Semiconductor Corp.*, 69 U.S.P.Q.2d (BNA) 1203, 1211, 56 Fed. R. Serv. 3d (Callaghan) 307, Copy. L. Rep. (CCH) ¶ 28,656 (M.D.N.C. July 9, 2003) (recommending to dismiss the second case, under the first-to-file rule, without prejudice to pleading counterclaims in the earlier-filed case), *report adopted*, Case No. 1:02-CV-1057 (M.D.N.C. Oct. 15, 2003) (unreported). The converse is therefore true as well, meaning that copyright infringement claims are compulsory counterclaims to previously filed misuse claims. By the same logic, the Agencies' infringement claims and their own related DMCA claims here are compulsory counterclaims to ENTTech's previously filed DMCA misrepresentation and RICO claims, alleging abusive DMCA conduct:

> 17. The problem with Okularity's scheme, however, is that it is illegal. By automatically generating and submitting DMCA Notices, Okularity has failed to follow the terms of the DMCA.
>
> 18. More concerning, however, is that Defendants [including BackGrid, Splash News and Xposure Photo] (1) are engaged in a scheme to deprive Plaintiff [*i.e.,* ENTTech] of its digital assets through a pattern of fraudulent statements made in DMCA Notices and directly to Plaintiff, (2) have intentionally interfered with Plaintiff's business by taking a course of action that they knew was substantially likely to deprive them of one of their primary digital assets prior to asserting any legal claim for settlement; and (3) are

using unfair, fraudulent and illegal methods to carry out their scheme, further detailed herein.

Dkt. 14-3, Exhibit 1, ¶¶ 17-18; *see also* Exhibit A, *infra* ¶¶ 17-18.

> Okularity, which is not a law firm, purportedly "represents" the "Clearinghouse Defendants" with respect to their Copyright "claims." Okularity's "CEO" Jon Nicolini, created the software Okularity deploys to file DMCA Notices, and negotiates "settlements" with victims of the scheme once they contact Okularity. Nicolini, who is not an attorney, implies that he is an attorney to victims by interpreting the application of the Copyright Act to images, engaging in damages analysis regarding "claims" of his "clients," and by negotiating resolution of legal claims on their behalf.

Dkt. 14-3, Exhibit 1, ¶ 24; *see also* Exhibit A, *infra* ¶ 24.

Nothing in the Opposition attempts to show otherwise. Instead, Plaintiffs merely argue that some (obviously, not all) of their copyright infringement allegations concern postings by ENTTech on other platforms (such as Twitter) and *Paper*'s own website, and that Plaintiff did not issue DMCA takedown notifications for those photos. *See* Opposition at 7 (citing "Exhibits A-1, A-2, A-3, B-1, B-2, B-3" to their Complaint, which are Dkt. 1-1, 1-2, 1-3, 1-4, 1-5 and 1-6). Because the first-to-file rule does not require identical issues or "exact parallelism" of every claim or issue (*see Nakash*, 882 F.2d at 1416), the Plaintiff's purported distinction between the alleged Instagram infringements and any others is immaterial to deciding whether to dismiss the Second Case. Moreover, this purported distinction would not change the fact that some of their infringement allegations (and all of their DMCA allegations) obviously ***do*** involve Instagram postings – which ***did*** receive their DMCA notifications – since otherwise, the filing of the Complaint containing its request for injunctive relief would not have any practical or legal effect on Instagram. Instagram is owned by Facebook,[5] and the Complaint specifically prays for an injunction against the alleged infringement, "including on Instagram and Facebook." *See* Dkt. 1, Prayer for Relief ¶ 1.

---

[5] "Instagram is a Delaware limited liability company and a wholly-owned subsidiary of Facebook." *Voxer, Inc. v. Facebook, Inc.*, 2020 U.S.P.Q.2d (BNA) 10690, n.1 (W.D. Tex. June 22, 2020).

**REPLY IN SUPPORT OF MOTION TO DISMISS**

1  Actually, the cited Exhibits A-1, A-2 and A-3 are not copies of any allegedly
2  infringing photo postings at all; rather, they are just copies of Copyright Office
3  website pages showing what the Plaintiffs describe as "copyright registration of
4  their respective Agency Photographs." *See* Dkt. 1, ¶ 10.  According to those
5  exhibits, Plaintiffs allegedly registered 643 separate images for copyright
6  protection.  Reviewing the 34 discrete photos in Exhibits B-1, B-2 and B-3
7  demonstrates that most (if not all) of them were posted on Instagram.  Indeed, the
8  Complaint does not attempt to ***differentiate*** the alleged Instagram infringements
9  from any others.  The opposite: it ***aggregates*** the infringement allegations, through
10 claiming infringement by ENTTech "on, at least, EntTech's social media accounts
11 and/or its Website."  Dkt. 1, ¶ 14.
12       Finally, no preclusion results from Judge Klausner's decision to decline a
13 related-case transfer.  *See* Dkt. 10.  Judicial estoppel would require some
14 inconsistent assertion by ENTTech – but, ENTTech has never asserted that
15 Plaintiffs' claims are unrelated.  *See, e.g., Hamilton v. State Farm Fire & Cas. Co.*,
16 270 F.3d 778, 782 (9th Cir. 2001) (judicial estoppel "precludes a party from
17 gaining an advantage by asserting one position, and then later seeking an
18 advantage by taking a clearly inconsistent position.").  Collateral estoppel (also
19 known as issue preclusion) would require a final judgment in the First Case, which
20 has not occurred.  *See Miesegaes v. Dep't of State Hosps.*, 2020 U.S. Dist. LEXIS
21 140803, *1-2 (C.D. Cal. Aug. 6, 2020) ("[c]ollateral estoppel does not apply to the
22 Court's prior screening order because the screening order is not a final judgment";
23 *citing Eilrich v. Remas*, 839 F.2d 630, 632 (9th Cir. 1988)).  Nor does the
24 declination order constitute any "law of the case."  The discretionary law-of-the-
25 case doctrine "generally" provides that "when a court decides upon ***a rule of law***,
26 that decision should continue to govern ***the same issues*** in subsequent stages in the
27 same case." *Askins v. United States Dep't of Homeland Sec.*, 899 F.3d 1035, 1042
28 (9th Cir. 2018) (emphasis added; citations and quotation marks omitted).  The

transfer declination order does not "decide[ ] upon" any rule of law, because Plaintiffs themselves neglected to file and serve the "brief factual statement that explains how the cases in question are related under the foregoing factors" that Civ. L.R. 83-1.3.1 expressly requires. Instead of filing any Notice of Related Cases containing such an explanation, as required by Rule 83-1.3.1, they merely checked the "YES" box in Section IX(b) of their Civil Case Cover Sheet (Dkt. 2). Plaintiffs also do not (and cannot) contend that the transfer declination order decided *the same* issue raised by the Rule 13(a) or the first-to-file rule. Instead, they contend Rule 83-1.3.1 is "more laxed" than Rule 13(a). *See* Opposition at 5-6. This characterization of the two rules is debatable (at best), but there is no room for debating whether those two rules are "the same" as each other (they are not) or that Rule 83-1.3.1 is the somehow the same as the first-to-file rule (it is not). Actually, Rule 83-1.3.1 explicitly only governs parties, such as Plaintiffs (who were required to file a Notice of Related Cases), and not the judges of the Court itself. Because the rules are not the same, the transfer declination could not be law of the case.

### III.   CONCLUSION

The Complaint here in this Second Case should be dismissed without prejudice to asserting the same claims as compulsory counterclaims in the earlier-filed First Case.

Dated: August 13, 2020

Respectfully submitted,

**TAULER SMITH, LLP**

By: /s/ Robert Tauler
        Robert Tauler

Counsel Defendant
ENTTECH MEDIA GROUP LLC

13
**REPLY IN SUPPORT OF MOTION TO DISMISS**

# CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2020 copies of the foregoing document were served by the CM/ECF system to all counsel of record.

Dated: August 13, 2020             **TAULER SMITH, LLP**

By: /s/ Robert Tauler
    Robert Tauler

Counsel for Defendant
ENTTECH MEDIA GROUP LLC