Robert Tauler (SBN 241964)
rtauler@taulersmith.com
Tauler Smith, LLP
626 Wilshire Boulevard, Suite 510
Los Angeles, California 90017
Tel: (310) 590-3927

Counsel for Defendant
ENTTECH MEDIA GROUP LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| BACKGRID USA, INC., et al.,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>ENTTECH MEDIA GROUP LLC, et al.,<br><br>　　　　Defendants. | CASE NO. 2:20-cv-06803-RSWL (RAOx)<br><br>Assigned to Hon. Ronald S.W. Lew<br>Courtroom ___ [TBA]<br><br>**MOTION TO DISMISS THE FIRST AMENDED COMPLAINT [22]; AND**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Fed. R. Civ. P. 13(a)]<br><br>Hearing Date:　September 22, 2020<br>Time:　　　　　10:00 a.m.<br>Place:　　　　　To Be Announced<br><br>Hon. RONALD S.W. LEW |

**MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND COUNSEL OF RECORD:

NOTICE is given that Defendant ENTTech Media Group LLC ("ENTTech") respectfully will and hereby does move to dismiss the First Amended Complaint For: 1) Copyright Infringement (17 U.S.C. § 501) 2) Declaratory Relief Under 17 U.S.C. § 512(G) 3) Misrepresentation Under 17 U.S.C. § 512(F) (the "FAC" in Dkt. 22, filed on August 14, 2020). In substance, this Motion effectively renews ENTTech's Dkt. 11 motion to dismiss the original Complaint (Dkt. 1), because the current FAC is (in its relevant substance) the same as the original Complaint. ENTTech now respectfully moves to dismiss the FAC without leave to amend, but without prejudice to asserting the same claims in the earlier-filed First Action, and to close the case here in the Second Action. Unless otherwise ordered, this Motion will be heard at 10:00 a.m. on Tuesday, September 22, 2020 in a courtroom to be announced.

This Motion is and will be based on the ground that the claims for relief asserted in the FAC are (like the claims in the original Complaint, Dkt. 1) compulsory counterclaims arising out of the same transactions or occurrences that are the subject of ENTTech's own claims in the earlier-filed case of *ENTTech Media Group LLC v. Okularity, Inc., et al.*, 2:20-cv-06298-RGK, filed by ENTTech on July 15, 2020 (the "First Action"). Here in this case (the "Second Action"), as the Plaintiffs' own original Complaint correctly conceded, "Defendant has filed a related lawsuit in the Central District of California, *EntTech Media Group LLC v. Okularity, Inc., et al.*, 2:20-cv-06298." See Dkt. 1, ¶ 2. The current FAC concedes the same thing, still. See Dkt. 22, ¶ 2. All the plaintiffs here in this Second Action were already named as defendants in the First Action filed by *ENTTech* back on July 15, 2020. Their claims here are related to ENTTech's claims in the First Action – logically, factually, legally.

This motion is and will be based on the compulsory counterclaim rule in Fed. R. Civ. P. 13(a) and the Court's inherent authority to dismiss a related second-filed action under the first-to-file rule, as well as the Memorandum of Points and Authorities set forth below; any Reply in support of this motion or that request; the records and files of this action; and any oral argument that the Court may choose to permit.

This motion is made following the conference of counsel pursuant to Civ. L.R. 7-3 which took place on August 18, 2020.  No agreement was reached, because the Plaintiffs' counsel merely renewed their previous refusals to dismiss the request for injunctive relief in this action – so that "the [Instagram] account can go back up" – unless ENTTech were to dismiss the First Action, concede liability on their copyright infringement claims against ENTTech in the Second Action, and submit to arbitration concerning the claimed "damages." *See, e.g.*, Dkt. 14-1 at 16 (email sent on Aug. 6, 2020).

Dated: August 25, 2020

Respectfully submitted,

**TAULER SMITH, LLP**

By: /s/ Robert Tauler
         Robert Tauler

Counsel for Defendant
ENTTECH MEDIA GROUP LLC

# MEMORANDUM OF POINTS AND AUTHORITIES

The First Amended Complaint (the "FAC," Dkt. 22) in this action against ENTTech should be dismissed – with leave to plead the same claims in the First Action, but without leave to amend them yet again here in the Second Action – and this case should be closed.

## I.  FACTS

Factually, nothing has changed since the Court's ruling (Dkt. 23) denying as moot ENTTech's motion (Dkt. 11) requesting to dismiss the original Complaint, in light of the Plaintiffs' intervening FAC filing of August 14, 2020.  ENTTech had commenced the "First Action" back on July 15, 2020 by suing Okularity, Inc. and its affiliates Jon Nicolini; Backgrid USA, Inc.; Splash News and Picture Agency, LLC; and Xposure Photo Agency, Inc.  The Court here in this "Second Action" has taken judicial notice of the Complaint in the First Action.  *See* Dkt. 19 at 4 n.2 (taking judicial notice); Dkt. 14-3, Exhibit 1 (attaching a copy of the first complaint).  Two weeks later, on July 29, 2020, most of the same defendants filed this Second Action.  *See* Dkt. 1.  All three of the plaintiffs here in the Second Action – namely BackGrid USA, Splash News, and Xposure Photo – were already named as defendants in the First Action.  In other words, the parties in both cases are substantially the same, as required to invoke the first-to-file rule, even though two of the defendants in the First Action (namely, Okularity and Nicolini) did not join as plaintiffs here.  *See Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*, 544 F. Supp. 2d 949, 959 (N.D. Cal. 2008) ("The rule is satisfied if some [of] the parties in one matter are also in the other matter, regardless of whether there are additional unmatched parties in one or both matters").  As the original Complaint here in this Second Action also alleged, the two lawsuits are related to one another: "Defendant has filed a related lawsuit in the Central District of California, *EntTech Media Group LLC v. Okularity, Inc., et al.*, 2:20-cv-06298."  *See* Dkt. 1, ¶ 2.

1　　　　Tellingly, the new FAC in this action still acknowledges this same
2　indisputable fact:  namely, that "Defendant has filed a related lawsuit" in the First
3　Action.  *See* Dkt. 22, ¶ 2.  The two cases are indeed related, because they both
4　involve the same "take-down" notifications and counter-notifications – both
5　involving the very same photographs, which are claimed to infringe exactly the
6　same copyrights – under the Digital Millennium Copyright Act (the "DMCA").
7　On August 10, 2020, ENNTech filed an amended complaint in the First Action,
8　which again contains exactly the same DMCA allegations under § 512(f) as in the
9　original ENNTech complaint of July 15, 2020.  *See* Dkt. 21-1, ¶¶ 35-43.[1]  As the
10　Plaintiffs here have characterized ENTTech's amendment, it merely "cut[s] out
11　[ENTTech's] state law claims, leaving only a RICO claim and a misrepresentation
12　claim under 512(f)" of the DMCA.  *See* Dkt. 20 at 5.  On August 14, 2020, the
13　three Plaintiffs filed their FAC here, which thereby mooted the pending motion by
14　ENTTech to dismiss their original Complaint.  None of these various amendments
15　changes the central basis for dismissing this Second Action.  In effect, therefore,
16　ENTTech respectfully renews its earlier Dkt. 11 motion.

## II.　ARGUMENT

18　　　　Because the original Complaint here conceded (correctly) that "Defendant
19　***has filed*** a related lawsuit" in the First Action (emphasis added), the Second
20　Action should be dismissed.  In determining whether to apply the first-to-file rule,
21　"the court should employ the date on which the original, rather than the amended,
22　complaint was filed."  *Guthy-Renker Fitness L.L.C. v. Icon Health & Fitness, Inc.*,
23　179 F.R.D. 264, 270 (C.D. Cal. 1998) (citation omitted).  That was the July 15,
24　2020 date of ENTTech's original complaint filing in the First Action – prior to the
25　original Complaint filing here in the Second Action on July 29, 2020.

---

[1] ENTTech respectfully requests judicial notice of its First Amended Complaint of August 10, 2020 (Dkt. 21-1) as filed in the First Action.  *See* Fed. R. Evid. 201 and the authorities cited by the Court in Dkt. 19 at 4 n.2.

2
**MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Importantly, "[a] lawsuit raising a section 512(f) claim" under the DMCA does not lose its "first" filed priority, unless the alleged copyright owners themselves "first (or simultaneously) fil[ed] an infringement lawsuit" at the time of their DMCA notices. *See Amaretto Ranch Breedables v. Ozimals, Inc.*, 97 U.S.P.Q.2d (BNA) 1664, 1666, Copy. L. Rep. (CCH) ¶ 30,018 (N.D. Cal. Dec. 10, 2010) (declining to dismiss the first case). Here, ENTTech's § 512(f) claim of July 15, 2020 – pleading that "Plaintiff [ENTTech] seeks damages and attorneys' fees for Defendants['] bad-faith conduct under 17 U.S.C. §512(f)" (*see* Dkt. 14-3, Exhibit 1, ¶¶ 35-43) – was before the copyright infringement and related DMCA claims against ENTTech were filed in the Second Action on July 29, 2020 (*see* Dkt. 1, ¶¶ 51-59) and before the ***exact same*** DMCA claims were subsequently filed here in the Second Action as the Fourth and Fifth Claims for Relief in the FAC of August 14, 2020 (*see* Dkt. 22, ¶¶ 51-59). Actually, the only substantive change in the FAC has been the addition of more photos that allegedly were copied by ENTTech. *See* Dkt. 22, ¶ 9 (adding the allegation that "In addition, EntTech has infringed at least another 15 registered photos which are owned by each respective Agency."). And the three Plaintiffs here in the Second Action have conceded (as they must) that they never previously filed any other lawsuit against ENTTech; instead, they have said, they merely "attempt[ed] to vindicate their rights without use of judicial resources" by issuing their DMCA notifications. *See* Dkt. 20 at 3. Thus, in every relevant sense, the First Action was (indeed) the first filed.

"The purpose of Rule 13(a) is to prevent multiplicity of litigation and to promptly bring about resolution of disputes before the court." *Mitchell v. CB Richard Ellis Long Term Disability Plan*, 611 F.3d 1192, 1201 (9th Cir. 2010). The first-to-file rule serves the same purposes. *See Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991). Those rules preclude these

3
**MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

plaintiffs from asserting their claims here in the Second Action – precisely because they are required to plead them as counterclaims in the First Action, instead:

> A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim:
>
> (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and
>
> (B) does not require adding another party over whom the court cannot acquire jurisdiction.

Fed. R. Civ. P. 13(a). Because all three plaintiffs in this Second Action were already named as parties in the First Action, there is no possible need to name any other parties there in that action. Furthermore, the two actions clearly arise out of the same transactions or occurrences. The Ninth Circuit applies a "logical relationship test" to make the compulsory counterclaim determination. *See Pochiro v. Prudential Ins. Co. of Am.,* 827 F.2d 1246, 1249 (9th Cir. 1987). The logical relationship test requires the Court to "analyze whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Id*. The plaintiffs here in the Second Case are still alleging that all of their "actions were lawful and expressly prescribed by the DMCA" (*see* Dkt. 22, ¶ 20) – while the exact opposite is being alleged against them in the First Action. As ENTTech continues to allege in the First Action:

> 12. Defendants are engaged in a scheme to deprive Plaintiff [*i.e.*, ENTTech] and similar digital media companies of their assets by unlawfully manipulating the take-down notice provisions of the Digital Millennium Copyright Act ("DMCA"). Specifically, Defendants have created software for the express purpose of disabling valuable commercial accounts on social media platforms (in this case

Instagram) so that they can then demand extortionate sums (in this case over a million dollars) from the account holders to have the accounts restored.

Dkt. 21-1, ¶ 12; *see also* Dkt. 14-3, Exhibit 1, ¶ 12 (the same allegation in ENTTech's original complaint). Similarly, ¶¶ 54 and 58 of the FAC here in the Second Action still alleges that ENTTech's counter-notifications to Instagram under the DMCA were false (*see also* Dkt. 1, ¶¶ 54 and 58); while, in the First Action, ENTTech itself continues to allege that their own DMCA notifications were false (*see* Dkt. 21-1, ¶ 37; *see also* Dkt. 14-3, Exhibit 1, ¶ 37). In fact, the FAC here in the Second Action still affirmatively seeks to justify the Plaintiffs' exact conduct that ENTTech has challenged in the First Action. *See* Dkt. 22, ¶¶ 17-20 (expressly alleging that ENTTech's allegations on the First Action are incorrect); *see also* Dkt. 1, ¶¶ 17-20 (alleging the same). Those logical relationships still make the claims in the Second Action compulsory in the First Action, despite the nominal amendment by FAC filing of August 14, 2020.

"Once a Court determines 'that an action on its docket involves a claim that should be a compulsory counterclaim in another pending federal suit, it will stay its own proceedings or will dismiss the claim with leave to plead it in the prior action.'" *Ruckus Wireless, Inc. v. Harris Corp.*, 2012 U.S. Dist. LEXIS 22336, *8, (N.D. Cal. Feb. 22, 2012) (quoting 6 Charles Alan Wright, Arthur R. Miller, Mary Kane, & Richard L. Marcus, *Federal Practice & Procedure* § 1418 (3d ed. 2011)). Dismissal, rather than a stay, is warranted here in this instance – just as dismissal was ordered in *Ruckus* – because dismissal will not prejudice the second-action plaintiffs on the (purported) merits of their claims. There would be no such prejudice, because any counterclaims may readily be pleaded there, despite dismissal of the amended claims here. *See also Riviera Travel & Tour, Inc. v. Novokshonov*, 2012 U.S. Dist. LEXIS 196497, *5-6 (C.D. Cal. Aug. 23, 2012) ("the Court GRANTS Defendants' Motions to Dismiss [the second case] and *sua*

5
**MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

*sponte* GRANTS Plaintiff leave to file its claims as compulsory counterclaims in [the first case].").

Still, Plaintiffs have contended that dismissing the Complaint would "unduly" prejudice them, because their Complaint (itself) alleged that "EntTech is a repeat and notorious infringer with an extremely popular Instagram Account." *See* Dkt. 20 at 8 (citing ¶¶ 12-14 of Dkt. 1 and its attached Exhibits B-1, B-2 and B-3). Dismissal would therefore cause them prejudice, Plaintiffs say, because re-filing their claims as counterclaims in the First Case "will not meet the timing requirements under 17 U.S.C. § 512(g)(2)(C), which *requires* that suit for injunctive relief be filed within 10 business days from the date of the counter-notification." *Ibid.* (emphasis in original). This was incorrect *vis-à-vis* the original Complaint, and it remains incorrect now following the FAC filing of August 14, 2020 – for exactly the same reasons. Literally nothing in § 512(g)(2)(C) imposes any timing requirement for Plaintiffs to file a suit for injunctive relief. Therefore, Plaintiffs may readily assert a counterclaim seeking injunctive relief in the First Case now, or any time they choose. Section 512(g) merely affords *Instagram* a limited immunity from liability – if ENTTech were to sue Instagram for disabling access – based partly upon the timing of an injunctive filing by Plaintiffs. Section 512(g) provides:

> **(g) Replacement of removed or disabled material and limitation on other liability.**
> **(1)** No liability for taking down generally. Subject to paragraph (2), a service provider shall not be liable to any person for any claim based on the service provider's good faith disabling of access to, or removal of, material or activity claimed to be infringing or based on facts or circumstances from which infringing activity is apparent, regardless of whether the material or activity is ultimately determined to be infringing.
> **(2)** Exception. Paragraph (1) shall not apply … unless the service provider—
>> **(A)** takes reasonable steps promptly to notify the subscriber that it has removed or disabled access to the material;

> **(B)** upon receipt of a counter notification described in paragraph (3), promptly provides the person who provided the notification under subsection (c)(1)(C) with a copy of the counter notification, and informs that person that it will replace the removed material or cease disabling access to it in 10 business days; and
>
> **(C)** replaces the removed material and ceases disabling access to it not less than 10, nor more than 14, business days following receipt of the counter notice, unless its designated agent first receives notice from the person who submitted the notification under subsection (c)(1)(C) that such person has filed an action seeking a court order to restrain the subscriber from engaging in infringing activity relating to the material on the service provider's system or network.

17 U.S.C. § 512(g). Thus, by dismissing the FAC and closing the case in this action, the only immediate result would be to terminate Instagram's immunity from potential liability to ENTTech, if access to ENTTech's *Paper* magazine account with Instagram were not restored. And even though this probably means (practically speaking) that Instagram *will* restore ENNTech's account access, this too would not prejudice Plaintiffs – precisely because literally nothing in the DMCA's "legislative trade-off" (*see* Dkt. 20 at 9) affords Plaintiffs any right to disable ENTTech's account with Instagram, nor even the power to force Instagram into removing allegedly copyrighted materials. Plaintiffs simply misrepresent the statute by contending otherwise. *See* Dkt. 20 at 4 (misrepresenting § 512(g)(2)(B)).

     In short, Plaintiffs would suffer no prejudice, because they could readily pursue a temporary restraining order or injunctive relief in the First Case to stop ENTTech from accessing the Instagram account, if such relief were warranted (which it is not). Copyright claimants (such as these three Plaintiffs) can (and do) file counterclaims in response to DMCA claims under § 512(f) – notwithstanding the reference in § 512(g)(2)(C)'s liability protections to the filing of "an action." For instance, in *Equals Three, LLC v. Jukin Media, Inc.*, 139 F. Supp. 3d 1094 (C.D. Cal. 2015), the plaintiff (like ENTTech) "sued … for relief under § 512(f) … (which prohibits fraudulent use of DMCA takedown notices)." *Id.* at 1098. The

defendant readily counterclaimed, asserting that plaintiff "infringed nineteen of its copyrights." *Ibid*. Thus, Plaintiffs are also wrong in contending that ENTTech supposedly is moving to dismiss this Second Action "to evade the DMCA." *See* Dkt. 20 at 8 (in heading V). The opposite is true, precisely because ENTTech had every right to file the First Case under § 512(f) of the DMCA, without waiting for Plaintiffs to sue for copyright infringement and/or to attack its own counter-notifications to Instagram under § 512(f). *See Amaretto Ranch*, 97 U.S.P.Q.2d at 1666.[2] And, Plaintiffs are also wrong when they contend that "[t]he DMCA nowhere envisions that issue being commingled with other claims." *See* Dkt. 20 at 4 n.2. In fact, the Complaint in this action *itself* commingled issues of pure copyright infringement (in the First Claim for Relief) with DMCA notification issues (in the Second and Third Claims for Relief), and the FAC *now* does exactly the same thing (in Dkt. 22). This is understandable, because the DMCA says nothing whatsoever about mingling or not mingling claims.

Finally, it makes no difference when any of the Plaintiffs actually were *served* the summons in the First Case. *See Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 96 (9th Cir. 1982) (under the first-to-file rule, "[a] federal action is commenced by the *filing* of the complaint, not by service of process") (emphasis

---

[2] Section 512(f) provides:

**(f) Misrepresentations.—** Any person who knowingly materially misrepresents under this section—

    **(1)** that material or activity is infringing, or

    **(2)** that material or activity was removed or disabled by mistake or misidentification,

shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer, by any copyright owner or copyright owner's authorized licensee, or by a service provider, who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing, or in replacing the removed material or ceasing to disable access to it.

8
**MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

added). *But see* Ardalan Decl., ¶ 2 & Exhibit A (Dkt. 20-1) (disputing the service of process on Splash News).[3]

### III. CONCLUSION

The First Amended Complaint here in this Second Action should be dismissed without leave to amend, but without prejudice to asserting the same claims in the earlier-filed First Action.

Respectfully submitted,

Dated: August 25, 2020            **TAULER SMITH, LLP**

By: /s/ Robert Tauler
　　　Robert Tauler

Counsel Defendant
ENTTECH MEDIA GROUP LLC

---

[3] ENTTech respectfully requests judicial notice of the sworn Proof of Service for Splash News (Dkt. 21-2) as filed in the First Case. *See* Fed. R. Evid. 201 and the authorities cited by the Court in Dkt. 19 at 4 n.2.

# CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2020 copies of the foregoing document were served by the CM/ECF system to all counsel of record.

Dated: August 25, 2020   **TAULER SMITH, LLP**

By: /s/ Robert Tauler
Robert Tauler

Counsel for Defendant
ENTTECH MEDIA GROUP LLC