1
2
3
4
5
Peter R. Afrasiabi (Bar No. 193336)
pafrasiabi@onellp.com
**ONE LLP**
4000 MacArthur Boulevard
Each Tower, Suite 500
Newport Beach, CA 92660
Telephone: (949) 502-2870
Facsimile: (949) 258-5081

6
7
8
9
David Quinto (Bar No. 106232)
Joanna Ardalan (Bar No. 285384)
jardalan@onellp.com
**ONE LLP**
9301 Wilshire Boulevard
Penthouse Suite
Beverly Hills, CA 90210
Telephone: (310) 866-5157
Facsimile: (310) 943-2085

10
11
12
Attorneys for Plaintiffs
Backgrid USA, Inc., Splash News and
Picture Agency, LLC, Xposure Photo
Agency, Inc.

13

**UNITED STATES DISTRICT COURT**

14

**CENTRAL DISTRICT OF CALIFORNIA**

15

16
17
18
19
20
21
BACKGRID USA, INC., a California
corporation; SPLASH NEWS AND
PICTURE AGENCY, LLC, a Nevada
limited liability company; XPOSURE
PHOTO AGENCY INC., a California
corporation,

Plaintiffs,

22

v.

23
24
25
ENTTECH MEDIA GROUP LLC. a
Delaware limited liability company; and
DOES 1-10, inclusive,

26

27

Defendants.

28

Case No.: 2:20-cv-06803 RSWL (RAOx)
Hon. Ronald S. W. Lew

**PLAINTIFFS BACKGRID USA, INC.'S, SPLASH NEWS AND PICTURE AGENCY, LLC & XPOSURE PHOTO AGENCY INC.'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................1

II.   STATEMENT OF FACTS.......................................................................2

III.  THE DEADLINE FOR COUNTERCLAIMS IN THE FIRST LAWSUIT
      HAS NOT OCCURRED AND MAY NEVER OCCUR...................................4

IV.   JUDGE KLAUSNER ALREADY RULED THAT THE LAWSUITS ARE
      NOT RELATED UNDER A MORE LAXED STANDARD THAN FRCP
      13(A)......................................................................................................5

V.    THE AGENCIES' CLAIMS WILL NEVER BE COMPULSORY
      COUNTERCLAIMS ................................................................................6

VI.   ENTTECH ADMITS THAT THE AGENCIES' CLAIMS NEED NOT BE
      BROUGHT IN THE FIRST ACTION; THIS MOTION WAS BROUGHT TO
      EVADE THE DMCA ..............................................................................8

VII.  ASSUMING ARGUENDO THE COURT FINDS THAT THE PHOTO
      AGENCIES' CLAIMS ARE COMPULSORY THEY SHOULD BE
      ALLOWED TO CONTINUE IN THIS ACTION, OR ALTERNATIVELY
      SHOULD BE TRANSFERRED AND CONSOLIDATED UNTIL THE
      AGENCIES MAY ASSERT THEIR CLAIMS IN THE FIRST LAWSUIT....8
      A.   Dismissal Would Be Unduly Prejudicial to the Agencies.......................8
      B.   A Compulsory Claims May Proceed in a Separate Action ...................10
      C.   The Court has Broad Discretion to Consolidate or Transfer Separate
           Actions .............................................................................................10
      D.   The Glaringly Frivolous Request for Judicial Notice Should be Denied
           .........................................................................................................11

VIII. CONCLUSION ....................................................................................12

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5

*ENTtech v. Okularity, et al.*,
    2:20-cv-06298 RGK ...........................................................................1, 3

6

7

*Grendene USA, Inc., v. James Brady*,
    3:14-cv-2955-GPC (Dkt. 21) (S.D.Cal. April 1, 2015)......................6, 7

8

9

*Huene v. United States*,
    743 F.2d 703 (9th Cir. 1984) ...............................................................11

10

11

*Investors Research Co. v. U.S. Dist. Court for Cent. Dist. of Cal.*,
    877 F.2d 777 (9th Cir. 1989) ...............................................................10

12

13

*Mellon Bank, N.A. v. Ternisky*,
    999 F.2d 791 (4th Cir. 1993) ...............................................................10

14

15

*Pochiro v. Prudential Ins. Co. of Am.*,
    827 F.2d 1246 (9th Cir. 1987) ...............................................................6

16

*Sparrow v. Mazda Am. Credit*,
    385 F.Supp.2d 1063 (E.D. Cal. 2005) ...................................................7

17

**Statutes**

18

19

17 U.S.C. § 512(c)(1), (3)...........................................................................3

20

17 U.S.C. § 512(g)(2) ..................................................................................3

21

17 U.S.C. § 512(g)(2)(B) .............................................................................4

22

17 U.S.C. § 512(g)(2)(C) .............................................................................9

23

17 U.S.C. § 512(g)(3) ..................................................................................3

24

17 U.S.C. § 512(i) .............................................................................. 3, 9, 10

25

**Other Authorities**

26

27

Fed. R. Civ. P. 11 ............................................................................. 1, 4, 10

28

Fed. R. Civ. P. 12(b)(6) ..............................................................................4

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Fed. R. Civ. P. 13 ................................................................................... 10

Fed. R. Civ. P. 13(a) ........................................................... 2, 4, 5, 10

Fed. R. Civ. P. 13(a)(1) ........................................................................ 4

Fed. R. Civ. P. 42(a) .......................................................... 10, 11

H.R. Rep. 105-551(II), (1998) ............................................................ 9

L. R. 83-1.3.1 ......................................................................................... 5

iii

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

## I.      INTRODUCTION

Defendant ENTtech Media Group LLC ("ENTtech") brings this motion to dismiss Plaintiffs Backgrid USA, Inc., Splash News and Picture Agency, LLC and Xposure Photo Agency, Inc.'s (collectively the "Photo Agencies") First Amended Complaint, because, it asserts, the claims should be compulsory counterclaims in *ENTtech v. Okularity, et al.,* 2:20-cv-06298 RGK (Ex) (the "First Lawsuit").

The motion to dismiss and this opposition to dismiss the First Amended Complaint are largely duplicative of the motion to dismiss and the opposition to the motion to dismiss the initial Complaint. The First Amended Complaint was filed while the first motion to dismiss was pending and added additional infringements to the copyright infringement claim.  As such, ENTtech has been on notice of the arguments contained in the opposition to the motion to dismiss the initial complaint and yet still ignores the two threshold issues which the Court must confront before the Parties may even argue this motion on the merits.

First, the deadline to file counterclaims in the First Lawsuit has not yet occurred.  *See* ENTtech v. Backgrid, et al. 2:20-cv-06298-RGK (Ex) (docket). It may ***never*** occur because the Photo Agencies have filed a pending motion to dismiss for failure to state a claim and will file a Rule 11 motion, if the other lawsuit is not withdrawn. The Photo Agencies should not have their claims dismissed when that deadline may ***never*** occur.  If the motion to dismiss ENTtech's complaint is granted, the order will dispose of the ***entire*** action. In addition, Defendant's counsel has been served with a Rule 11 motion on August 31, 2020.  Unless ENTtech withdraws its lawsuit, the motion for sanctions will be filed shortly after 21 days after service. If granted, that motion will dispose of the entire action.

Second, Judge Klausner, who is assigned to the First Lawsuit, already ruled that this lawsuit is ***not*** related to the First Lawsuit. As such, Judge Klausner has decided that the lawsuits do not satisfy any of the factors that would make two cases

1

related, and these factors as articulated by the Local Rules are ***less restrictive*** than the standard which determines whether a claim is compulsory or not.

Judge Klausner's ruling makes sense. Looking at the facts of the claims, it is clear that the Agencies' claims are not compulsory counterclaims. The First Lawsuit involves additional parties, who, Defendant claims "conspired" with the Agencies to take down Defendants' Instagram Account.[1] This lawsuit alleges copyright infringement and Defendant's bad faith submission of DMCA counternotifications, which involves a different factual basis than Defendant's claims, as they contest the ***Agencies'*** DMCA takedown notifications on a different factual basis.

Any of the concerns addressed by Rule 13(a) are not at issue here, as even ENTtech itself has tacitly admitted that the Agencies' claims may proceed in separate lawsuits. Ardalan Decl., Ex. A. ENTtech has proposed to the Agencies that if the Agencies were to drop their claim for injunctive relief, thus allowing Defendant to keep its Instagram account under the DMCA, then it would not object to the Agencies bringing a separate lawsuit. *Id.* This admission, alone, demonstrates that the Agencies should be allowed to bring this lawsuit.

Should the Court grant this motion, the Agencies request that their claims be transferred or consolidated with the First Lawsuit, not dismissed, as dismissal will irreparably damage the Agencies who are entitled, under the DMCA, to the termination of ENTtech's Instagram Account.

## II.    STATEMENT OF FACTS

This Action stems from a dispute over the Photo Agencies' copyright infringement claims against ENTtech. ENTtech owns, operates, and controls Paper Magazine and the Paper Magazine Instagram account (the "Account"). Unfortunately, to make the Account more popular, ENTtech resorted to infringing

---

[1] ENTtech filed a First Amended Complaint in the First Lawsuit. It dismissed all claims but the Violation of the DMCA under 512(f) and RICO.

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

the Agencies' timely registered celebrity photographs to generate revenue (collectively the "Infringements"). (*See* FAC, Exhibit B-1, B-2, B-3, B-4, B-5, B-6.) In an attempt to vindicate their rights without use of judicial resources, the Agencies caused Digital Millennium Copyright Act Notifications ("DMCA Notices") to be issued to Instagram that were directed to ENTtech's Infringements. *See* 17 U.S.C. § 512(c)(1), (3); FAC, ¶ 17.  In response, as required to maintain a safe harbor defense under the DMCA, Instagram took down the Infringements. Presumably, due to the number of takedown notifications that ENTtech received, Instagram determined that it was a repeat infringer under 17 U.S.C. § 512(i), and, as such, terminated or suspended the Instagram account under its repeat infringer policy. *Id.*

The Instagram Account was not taken down by the Agencies: The Account was taken down by Instagram that, it seems, just followed its own rules by prohibiting infringement and by disabling accounts that Instagram found to be repeat infringers. (FAC ¶ 17.)

Unhappy that the Paper Magazine Account was taken down by Instagram, ENTtech filed the First Lawsuit against the Agencies, Okularity and Jon Nicolini, who issued the takedown notices.  *See ENTtech v. Okularity, et al.,* 2:20-cv-06298 RGK (Ex).

ENTtech also issued a perjurious counter-notification under 17 U.S.C. § 512(g)(3). The counter-notification claimed under penalty of perjury that the DMCA notices were a result of "mistake or misidentification," which they were not and for which Defendant had and still has no factual basis in support thereof. (FAC, ¶¶ 18, 19, Ex. C.)

Under 17 U.S.C. § 512(g)(2), if an internet service provider, such as Instagram, receives a counter-notification, it must promptly provide notice to the copyright holder that issued the DMCA notice and keep the infringements down

3

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

1   ***unless the copyright holder files "an action" for injunctive relief within 10***

2   ***business days.*** 17 U.S.C. § 512(g)(2)(B).[2]

3       The Agencies did just that: filed a suit for injunctive relief as was well within

4   their right under 17 U.S.C. § 512(g)(2)(B). The Account stayed down. ENTtech

5   views this lawsuit as a barrier to regaining access to its Account and, in response,

6   filed a motion to dismiss on the basis that the claims are compulsory counterclaims.

7       In the First Lawsuit, responsive pleadings will not be due, ***if ever,*** for months

8   to come. At the very least, the Photo Agencies have already filed a Rule 12(b)(6)

9   motion to dismiss and will file a Rule 11 motion that could dispose all of ENTtech's

10  claims. The Agencies should not be required to file their claims as counterclaims

11  when the First Lawsuit may not survive to the responsive pleading date.

12      Moreover, Judge Klausner already ruled that the First Lawsuit and this lawsuit

13  are ***not related cases.*** (Dkt. 10.) As such, it would be impossible for the Photo

14  Agencies' claims to be compulsory as the standard is higher under Rule 13(a) than

15  under the Local Rules.

16  **III.   THE DEADLINE FOR COUNTERCLAIMS IN THE FIRST LAWSUIT**

17         **HAS NOT OCCURRED AND MAY NEVER OCCUR**

18      "A pleading must state as a counterclaim any claim that –***at the time of its***

19  ***service***--the pleader has against an opposing party if the claim [satisfies certain

20  conditions]." Fed. R. Civ. Pro. 13(a)(1). The Agencies have not confronted the

21  deadline to file responsive pleadings. On August 10, 2020, ENTtech filed a First

22  Amended Complaint, cutting out its state law claims, leaving only a RICO claim and

23  a misrepresentation claim under 512(f). (First Lawsuit, Dkt. 23). ENTtech has

---

[2] The DMCA expressly calls for the copyright holder to file an "action" for injunctive relief. Section 512 does not say that the claims should be filed as a counterclaim in a separate, extant dispute that raises a host of other torts and issues. It instead envisions a specific action on whether the counternotification submitted contained material misinformation. Nothing else. That is a discreet action that must be adjudicated as a DMCA action. The DMCA nowhere envisions that issue being commingled with other claims.

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

confronted motion practice on these claims which may dismiss each of them, with prejudice. (First Lawsuit, Dkts. 27, 28.)

Even assuming *arguendo*, the Agencies' claims might be considered compulsory in the future, they are not at this time. Their deadline to file counterclaims may never occur and to dismiss the claims for want of something that the Agencies are not currently required to adhere, and may never be required to, is unequitable. For this reason, this motion should be denied.

## IV.   JUDGE KLAUSNER ALREADY RULED THAT THE LAWSUITS ARE NOT RELATED UNDER A MORE LAXED STANDARD THAN FRCP 13(A)

Under the Local Rules of the Central District of California, related cases are those that "appear [] (a) To arise from the same or a closely related transaction, happening or event; or (b) To call for determination of the same or substantially related or similar questions of law and fact; or (c) For other reasons would entail substantial duplication of labor if heard by different judges; or (d) To involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c is present." Local Rule 83-1.3.1. Judge Klausner decided that these two lawsuits do not appear to satisfy any of these factors. (Dkt. 10.) Comparing these factors to the standards for compulsory counterclaims, which looks at whether the claims "(A) arise[] out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction," it is apparent that the Local Rule standards for "related" cases are broader than that of Rule 13(a), as makes practical sense because, of course, compulsory claims would be necessarily "related" claims.  A ruling that these claims are compulsory would be inconsistent with Judge Klausner's ruling.

ENTtech contends that because the Photo Agencies alleged that the lawsuits are "related" that this lawsuit must be dismissed. (Motion at 2.) ENTtech misses the point. As discussed immediately above, that a related suit exists does not necessarily

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

mean that the claims are compulsory. And, regardless, Judge Klausner already ruled they were not related, which means, necessarily, that the claims brought in this action cannot be compulsory.

## V.   THE AGENCIES' CLAIMS WILL NEVER BE COMPULSORY COUNTERCLAIMS

In determining whether a counterclaim is compulsory, the Ninth Circuit applies the "logical relationship test" which "analyze[s] whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Pochiro v. Prudential Ins. Co. of Am.,* 827 F.2d 1246, 1249 (9th Cir. 1987) (*quoting Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978)).  In *Grendene USA, Inc., v. James Brady*, 3:14-cv-2955-GPC, ksc, (Dkt. 21) (S.D.Cal. April 1, 2015), the Court applied the logical relationship test and decided that the "essential facts" of a trademark infringement action differ from those of the plaintiff's breach of contract cause of action which dealt with the defendant's decision to file a lawsuit based on the alleged infringement. In analogous circumstances to this lawsuit and the First Lawsuit, the court there held that the infringement claim involves separate facts as the decision to bring a legal cause of action that is separate from the elements of the infringement cause of action. The court decided they claims were not compulsory.

ENTtech has withdrawn all of its claims in the First Lawsuit, except for two: Violations of the Digital Millennium Copyright Act under 512(f) and RICO. The gist of ENTtech's factual allegations is that the Photo Agencies, along with two other defendants in the First Lawsuit, have created software that assists them to track copyright infringements and to send DMCA takedown notifications. (First Lawsuit, Dkt. 23, ¶¶12-18.) ENTtech further alleges that when Instagram received enough of the DMCA notices, Instagram took down the account and the Photo Agencies refused to retract their DMCA notices without execution of a settlement agreement. *Id.*

6

ENTtech claims the "exact same DMCA claims were subsequently filed in here in the Section Action []." (Motion at 3.)  Not true. The Photo Agencies' claims in this lawsuit are different. First, they include copyright infringement claims for numerous other Agency-photos which were infringed by ENTtech on *other* platforms (e.g. Twitter and its own website) and which were *not the subject* of any DMCA notice. (*See* Exhibit A-1, A-2, A-3, B-1, B-2, B-3.) As such, numerous photographs at issue are outside the scope of the First Lawsuit. Additionally, while the Photo Agencies have also alleged a claim for misrepresentation under 512(f), the basis of that claim includes different factual circumstances. The claims may be labeled as the same claim, but they necessarily required *different essential facts*: The gist of the Agencies' 512(f) claim is that ENTtech's counter-notifications were sent in bad faith because they falsely claimed that the DMCA notices were sent as a result of "mistake or misrepresentation," without any factual basis for saying the same. FAC, ¶¶18, 19, 54. The gist of ENTtech's 512(f) claim is that the Agencies' DMCA notifications were sent in bad faith, including because, they claim, the Photo Agencies, Okularity and Nicolini "fail[ed] to consider" fair use and because, despite not being required in the Copyright Act, "never sent a demand letter" prior to issuing notices, and because Okularity's agency of the Photo Agencies had not been proven to ENTtech. First Lawsuit, Dkt. 23, ¶¶41, 42. Significantly, affirmative defenses are not appropriate to consider during the compulsory counterclaim analysis. *See Sparrow v. Mazda Am. Credit*, 385 F.Supp.2d 1063, 1069 n.3 (E.D. Cal. 2005); *Grendene USA, Inc., v. James Brady*, 3:14-cv-2955-GPC, ksc, (Dkt. 21) (S.D.Cal. April 1, 2015). With respect to the 512(f) claims, the Photo Agencies' DMCA claim and ENTtech's DMCA claim are not mutually exclusive.  Hypothetically, both parties could be right, both could be wrong, or one could be right and one could be wrong completely independent of themselves.  If ENTtech's counter-notification is sent in bad faith when it claimed that the DMCA notice was a result of a mistake or misidentification, it does not necessarily mean that the Agency's DMCA notices

7

were sent in bad faith and made a purported material misrepresentations one way or the other, which is what is required for 512(f), not a mistake or misidentification.

As such, the factual circumstances of the claims do not overlap.

## VI.   ENTTECH ADMITS THAT THE AGENCIES' CLAIMS NEED NOT BE BROUGHT IN THE FIRST ACTION; THIS MOTION WAS BROUGHT TO EVADE THE DMCA

ENTtech itself has tacitly admitted that the Agencies' claims should be allowed to proceed at the same time as its proposal expressly contemplates two cases. (Ardalan Decl., Ex. A. (August 4 email, which includes as part of ENTtech's proposal: "ENTtech will not re-post any such photo unless otherwise agreed in writing by the parties, or unless it is expressly allowed to do so by an order of the Court (**in either the First or Second Case**), or the copyright claim is resolved by a determination of non-infringement by ENTtech as to that photo.")) ENTtech has proposed to the Agencies that if the Agencies were to drop their claim for injunctive relief, thus allowing Defendant to keep its Instagram account under the DMCA, then it would not object to the Agencies bringing a separate lawsuit. *Id.* This admission, alone, demonstrates that the Agencies should be allowed to bring this lawsuit.

## VII.   ASSUMING ARGUENDO THE COURT FINDS THAT THE PHOTO AGENCIES' CLAIMS ARE COMPULSORY THEY SHOULD BE ALLOWED TO CONTINUE IN THIS ACTION, OR ALTERNATIVELY SHOULD BE TRANSFERRED AND CONSOLIDATED UNTIL THE AGENCIES MAY ASSERT THEIR CLAIMS IN THE FIRST LAWSUIT

### A.   Dismissal Would Be Unduly Prejudicial to the Agencies

Dismissal would be prejudicial to the Photo Agencies because if this case were dismissed, ENTtech will seek to have its Instagram account put back up without litigating this case on the merits. ENTtech is a repeat and notorious infringer with an extremely popular Instagram Account. (*See* FAC ¶¶ 12-14, Exs. B-1, B-2, B-3, B-4, B-5, B-6.) Such infringement irreparably harms the Photo Agencies, whose

8

1   licensing business suffers when their content is already consumed by Instagram

2   users. (*See* FAC ¶¶  29, 39, 49.)

3          The Account was taken down because, presumably, Instagram determined that

4   ENTtech is a repeat infringer under its repeat infringer policy. This policy is

5   required if Instagram wishes to enjoy a DMCA safe harbor defense. 17 U.S.C. §

6   512(i). Under this Section, an Internet Service Provider, like Instagram, must have

7   and must reasonably implement a repeat infringer policy that includes termination of

8   users who are so deemed. If this lawsuit gets dismissed, then the Photo Agencies

9   will be forced to file their claims in the First Lawsuit early, before responsive

10  pleading are due, and will not meet the timing requirements under 17 U.S.C. §

11  512(g)(2)(C), which ***requires*** that suit for injunctive relief be filed within 10

12  business days from the date of the counter-notification for the repeat infringer to stay

13  down. The deadline has passed, so dismissal will be prejudicial. If the account does

14  not stay down, then the account and all of the infringement on the account will go

15  live once again.

16         The DMCA, which includes this takedown and stay-down procedure, is

17  legislation that represents a huge trade-off between copyright holders and internet

18  and online service providers. While Defendant may not like that the DMCA

19  provides for the account to stay down while the litigation is ongoing, that is what

20  Congress decided as part of the legislative trade-off.  S. Rep. 105-190, at

21  52 (1998); H.R. Rep. 105-551(II), at 61 (1998) "those who repeatedly or flagrantly

22  abuse their access to the Internet through disrespect for the intellectual property

23  rights of others should know that there is a realistic threat of losing that access."

24  ENTtech contests this point when it claims that the restoring of the Instagram

25  account "would not prejudice Plaintiffs—precisely because literally nothing in the

26  'legislative trade-off' [] affords Plaintiffs any right to disable ENTtech's account

27  with Instagram, nor even the power to force Instagram into removing allegedly

28  copyright materials." (Motion at 7.) ENTtech misses the point. The DMCA protects

9

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

1   ISPs, like Instagram, from liability of copyright holders *as long as* they comply with

2   the DMCA, which includes terminating repeat infringers, like ENTtech. *See* 17

3   U.S.C. § 512(i). Copyright holders, then, get the remedy of ceasing the infringement

4   in return for the absolving of the ISPs under the DMCA if they follow the rules.  If

5   there are so many infringements that the user, here ENTtech, is a repeat infringer,

6   then it may get terminated by the ISP. That is the trade-off and if ENTtech gets the

7   dismissal then all of the infringement goes back up, contrary to what Congress

8   intended, that would cause further damage to the Photo Agencies.  That isn't

9   equitable.

10      ENTtech should not be allowed to evade the DMCA by preemptively filing a

11   suit on baseless claims, which will inevitably be subject to a Rule 11 motion or a

12   12(b)(6) dismissal order.

13          **B.     A Compulsory Claims May Proceed in a Separate Action**

14      Rule 13(a) does not expressly prevent a party from filing a separate lawsuit.

15   Fed. R. Civ. Pro. 13(a). In *Mellon Bank, N.A. v. Ternisky*, 999 F.2d 791 (4th Cir.

16   1993), one of the parties moved to dismiss plaintiff's separate action under the

17   principle of res judicata. The court noted that Rule 13 did not bar plaintiff in the

18   second action from filing its complaint because it had yet to file a pleading in the

19   first action and had time to file its counterclaim. As such, the Photo Agencies claims

20   should be allowed to proceed in this action even if they are considered compulsory.

21   Dismissal would be prejudicial because the Photo Agencies would not get the

22   benefits contemplated to them under the DMCA, which would take down the

23   infringement and account, thus ensuring that the infringer does not repeat infringe

24   once more.

25          **C.     The Court has Broad Discretion to Consolidate or Transfer Separate**

26                 **Actions**

27      Federal Rule of Civil Procedure 42(a) grants the Court broad discretion to

28   consolidate separate actions. *Investors Research Co. v. U.S. Dist. Court for Cent.*

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

*Dist. of Cal.*, 877 F.2d 777, 777 (9th Cir. 1989). Under Rule 42(a), the Court may consolidate actions that involve common questions of law or fact. Fed. R. Civ. Pro. 42(a). The Court should also consider any time and effort saved by consolidation against any "inconvenience, delay, or expense that it would cause." *Huene v. United States,* 743 F.2d 703, 704 (9th Cir. 1984). Should the Court find that the Photo Agencies' Claims are compulsory, the Court has broad discretion to consolidate the actions. Instead of dismissing, the Photo Agencies request consolidation and/or transfer to avoid unfair prejudice. Moreover, nothing prevents consolidation under these circumstances.

### D. The Glaringly Frivolous Request for Judicial Notice Should be Denied

ENTtech makes a glaringly frivolous request for judicial notice in this motion. Footnote 3 of the motion requests judicial notice of the "sworn proof of service" for Splash. This point was raised in the first motion to dismiss because Splash had not been served and counsel knew it. Not only did Splash's counsel tell ENTtech's counsel that he served the ***wrong entity***, but the ***registered agent also sent Mr. Tauler a letter explaining that he served the wrong entity***. For ENTtech to request judicial notice of something it knows to be wrong and misleading is stunning, especially considering this evidence was filed with the Ardalan Declaration in Opposition to the Motion to Dismiss the initial complaint in this Action. (Dkt. 20-3, Ex. C.) Such request falls below the duty of candor expected by litigants and their counsel. In the end, the Proof of Service for Splash was stricken by the Judge Klausner for failure to comply with the Local Rules.

/ / /

/ / /

/ / /

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

## VIII.  CONCLUSION

The Agencies respectfully request that this motion to dismiss be denied. In the alternative, the Agencies request that this case get transferred to Judge Klausner and be consolidated with the First Lawsuit.

Dated:  September 1, 2020                    **ONE LLP**

By:  /s/ Joanna Ardalan
     Joanna Ardalan
     Peter R. Afrasiabi

     Attorneys for Plaintiff
     Backgrid USA, Inc.; Splash News and
     Picture Agency, LLC, Xposure Photo
     Agency, Inc.

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**