1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10
11
12   BACKGRID USA, INC, a        )   CV 20-6803-RSWL-RAOx
     California corporation:     )
13   SPLASH NEWS AND PICTURE     )
     AGENCY LLC. a Nevada        )   **ORDER re: Defendant's**
14   limited liability company;  )   **Motion to Dismiss the**
     and XPOSURE PHOTO AGENCY    )   **First Amended Complaint**
15   INC., a California          )   [24]
     Corporation,                )
16                               )
                 Plaintiffs,     )
17                               )
         v.                      )
18                               )
     ENTTECH MEDIA GROUP LLC. a  )
19   Delaware liability company; )
     and DOES 1 to 10,           )
20   inclusive,                  )
                                 )
21                               )
                 Defendants.     )
22   _____

23       Currently before the Court is Defendant EntTech

24   Media Group, LLC's ("Defendant") Motion to Dismiss the

25   First Amended Complaint ("Motion") [24].  Having

26   reviewed all papers submitted pertaining to this

27   Motion, the Court **NOW FINDS AND RULES AS FOLLOWS:** the

28   Court **GRANTS** Defendant's Motion.

# I. BACKGROUND

## A.  Factual Background

Plaintiffs Backgrid USA, Inc. ("Backgrid"), Splash News and Picture Agency, LLC ("Splash News"), and Xposure Photo Agency, Inc. ("Xposure") (collectively, "Plaintiffs") are Hollywood's largest celebrity-photograph agencies that regularly license celebrity-driven content to top-tier outlets such as TMZ, Entertainment Tonight, New York Post, and People Magazine, as well as many television stations and media outlets around the world.  First Am. Compl. ("FAC") ¶ 8, ECF No. 22.  Plaintiffs state that each license has been granted for valuable consideration of up to hundreds of thousands of dollars.  Id.  Defendant is an "entertainment technology ecosystem that leverages creative content, social amplification and proprietary data to deliver shareable entertainment to diverse groups of audiences."  Id. ¶ 11.  Among Defendant's properties is *Paper Magazine* ("*Paper*"), a fashion and celebrity driven magazine.  Id.  Defendant uses social media platforms such as Instagram[1] to promote *Paper* and engage with potential readers.  Id.  Plaintiffs allege

_____

[1] "Instagram is a web-based photo and video sharing social media platform through which users host and share user-generated content.  Instagram provides an application for mobile devices that allows users to upload photos, apply digital filters to those photos, and share them with others on Instagram and other social networking websites like Twitter and Facebook."  Rodriguez v. Instagram, LLC, C 12-6482, 2013 WL 3732883, at *1 (N.D. Cal. July 15, 2013).

that Defendant improperly reproduced, distributed, displayed, and created unauthorized derivative works of their copyrighted photographs on Defendant's social media accounts without consent or a license.  Id. ¶ 13.

Plaintiffs state that in order to minimize the damage Defendant's infringements caused, they caused certain Digital Millennium Copyright Act ("DMCA") Takedown Notices to be issued to Instagram.  Id. ¶ 17. Instagram took down the infringing content and later took the additional step of terminating or suspending the Instagram account associated with *Paper*.  Id.  On or around July 15, 2020, Instagram reported that Defendant had filed DMCA counter-notifications, which represented that Defendant's lawyer had "a good faith belief that the material in question was removed or disabled as a result of mistake or misidentification." Id. ¶ 18.

Plaintiffs claim that "unhappy that its Instagram account had been flagged as a 'repeat infringer' by Instagram," Defendant filed suit against Plaintiffs. Id. ¶ 20.

**B.  Procedural Background**

On July 15, 2020, Defendant filed a complaint against Plaintiffs, among others, alleging violations of the DMCA, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), intentional interference with economic advantage, and unfair competition (the "First Action").  The First Action is

currently pending before another court in this district. Two weeks later, on July 29, 2020, Plaintiffs initiated the instant Action [1] in this Court stating claims for copyright infringement, declaratory relief and misrepresentation.

On August 4, 2020, Defendant filed its First Motion to Dismiss ("First Motion to Dismiss") [11] with this Court seeking dismissal of Plaintiffs' Complaint under Federal Rule of Civil Procedure 13(a) alleging that the claims asserted in this Action are compulsory counterclaims arising out of the same transactions or occurrences as the First Action. Two days after filing the First Motion to Dismiss, on August 6, 2020, Defendant filed an *Ex Parte* Application ("First Application") [14] seeking to advance the hearing date of the First Motion to Dismiss. The Court denied Defendant's First Application finding that Defendant "failed to establish that it would be irreparably harmed by proceeding under the regularly noticed motion schedule." Order re *Ex Parte* Application ("First *Ex Parte* Order") 4:14-16, ECF No. 19. On August 21, 2020, this First Motion to Dismiss was denied as moot [23] due to Plaintiffs' filing of their First Amended Complaint [22]. See generally Order re First Motion to Dismiss, ECF No 23.

On August 25, 2020, Defendant filed the instant Motion [24]. Again, Defendant filed an *Ex Parte* Application ("Second *Ex Parte* Application") [25], which

1  the Court denied [29] for many of the same reasons
2  discussed in the First Application.  See Order re
3  Second *Ex Parte* Application ("Second *Ex Parte* Order"),
4  ECF No. 29.  Plaintiffs opposed [28] the instant Motion
5  on September 1, 2020, and Defendant replied [30] on
6  September 2, 2020.

## II. DISCUSSION

**A.  Legal Standard**

   1.  <u>First-To-File Rule</u>

    The first-to-file rule is "a generally recognized
doctrine of federal comity which permits a district
court to decline jurisdiction over an action where a
complaint involving the same parties and issues has
already been filed in another district." Pacesetter
Sys. v. Medtronic, Inc., 678 F.2d 93, 94-95 (9th Cir.
1982). "The purpose of the [first-to-file] rule is to
'avoid the waste of duplication, to avoid rulings which
may trench upon the authority of sister courts, and to
avoid piecemeal resolution of issues that call for a
uniform result." Olin Corp. V. Continental Cas. Co.,
2:10-cv-0623-GMN-RRJ, 2011 WL 1337407, at *2 (D. Nev.
April 6, 2011) (citing Save Power Ltd., v. Syntek
Finance Corp., 121 F.3d 947, 950 (5th Cir. 1997)).

    The first-to-file rule also applies when cases are
filed in the same district but are before different
courts given that the concerns of duplication and waste
are still relevant.  See Gaitlin v. United Parcel
Service, Inc., 2:18-cv-3135-SVW-AS, 2018 WL 10161198,

at *4 (C.D. Cal. Aug. 23, 2018) ("[I]n order to achieve sound judicial administration and avoid duplicative litigation, district courts may apply the first-to-file doctrine to two cases filed in the same district."); Wallerstein v. Dole Fresh Vegetables, Inc., 967 F. Supp. 2d 1289, 1294 (N.D. Cal. 2013) ("The Court finds that the first-to-file rule is not limited to cases brought in different districts.").

"The most basic aspect of the first-to-file rule is that it is discretionary . . . ." Alltrade, Inc. v. Uniweld Products, Inc., 946 F.2d 622, 628 (9th Cir. 1991). Courts analyze three factors in determining whether the first-to-file rule applies: (1) chronology of the actions; (2) similarity of the parties; (3) and similarity of the issues. Id. at 625-26; see Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc., 787 F.3d 1237, 1240 (9th Cir. 2015) (stating that the first-to-file rule only requires "substantial similarity of parties" and "substantial similarity" of issues which is determined by looking at "whether there is 'substantial overlap' between the two suits.").

2. Federal Rule of Civil Procedure 13(a)

Federal Rule of Civil Procedure ("Rule") 13(a) states that a "pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim: (A) arises out of the same transaction or occurrence that is the subject mater of the opposing party's claim; and (B)

does not require adding another party over whom the
court cannot acquire jurisdiction."  "The purpose of
requiring a defendant to assert his claim as a
counterclaim in a pending action is to 'prevent
multiplicity of actions and to achieve resolution in a
single lawsuit of all disputes arising out of common
matters.'"  Seattle Totems Hockey Club, Inc. v. Nat'l
Hockey League, 652 F.2d 852, 854 (9th Cir. 1981)
(citing Southern Constr. Co. v. Pickard, 371 U.S. 57,
60 (1962)).

When evaluating whether a cause of action is a
compulsory counterclaim, courts in the Ninth Circuit
apply the "logical relationship test."  A "logical
relationship exists when the counterclaim arises from
the same aggregate set of operative facts as the
initial claim, in that the same operative facts serve
as the basis for both claims or the aggregate core of
facts upon with the claim rests activates additional
legal rights otherwise dormant in the defendant."
Mattel, Inc. v. MGA Entm't, 705 F.3d 1108, 1110 (9th
Cir. 2013).  "Importantly, '[w]hat matters most is not
the legal theory but the *facts*.'"  Automated Logic
Contracting Servs. v. Sprig Elec. Co., 5:17-cv-5910-
EJD, 2018 WL 984857, at *2 (N.D. Cal. Feb. 20, 2018)
(citing Mattel, 705 F.3d at 1110 (emphasis in
original)).

**B.   Discussion**

In evaluating whether to exercise its discretion

7

under the first-to-file rule, a court must assess: (1) chronology of the filings; and (2) whether the parties and issues are substantially similar between the actions.   <u>Alltrade, Inc.</u>, 946 F.2d at 628.

Here, despite that Defendant dedicates a substantial portion of its Motion to discussion of the first-to-file rule, Plaintiffs' Opposition fails to address it.  The Court will consider each of the identified requirements of the first-to-file rule in turn.

First, there is no dispute that Defendant filed the First Action prior to the initiation of this Action. Defendant filed the First Action on July 15, 2020 and this Action was filed on July 29, 2020.[2]

Second, regarding similarity of the parties, the parties in the instant Action and the First Action are "functionally identical."  <u>SASCO v. Byers</u>, C 08-5641 JF (RS), 2009 WL 1010513, at *5 (N.D. Cal. April 14, 2009) (finding parties were "substantially similar" for the first-to-file rule where they were "functionally identical" between the two actions when the absence of

_____

[2] Plaintiffs briefly discuss service of Splash News in the First Action in their argument of whether Rule 13(a) applies to dismiss this Action; however, this discussion is irrelevant to chronology under the first-to-file rule as "[a] federal action is commenced by the filing of the complaint, not service of process."  <u>Pacesetter</u>, 678 2d 96 n.3 (finding plaintiff's contention that first-to-file rule was inapplicable where plaintiff was served in the first action after initiation of the second action "without merit" because basing jurisdictional decision "on the technicalities of service of process would be inappropriate").

a party had "no bearing on the resolution of the
dispute").   The fact that the First Action also
includes Okularity Inc. ("Okularity") and its CEO Jon
Nicolini ("Nicolini") as defendants does not weigh
against dismissal under the first-to-file rule.   Given
that all of the parties in the instant Action are also
parties to the First Action, the Court finds that the
parties are "substantially similar" for the purposes of
the first-to-file rule.   See Keen v. Limousine, 2:16-
cv-1903-JCM-GWF, 2016 WL 6828199, at *2 (D. Nev. Nov.
18, 2016) (finding parties in the first and second
actions were "substantially similar" favoring
application of the first-to-file rule where both
actions defined the class of plaintiffs "current and
former employees"); Gen. Prods. Mach. Shop, Inc. v.
Systematic Inc., No. CV-06-99-E-BLW, 2006 WL 2051737,
at *1 (D. Idaho July 20, 2006) ("The parties in the two
actions need not be identical for purposes of the
first-to-file rule, but there must be similarity or
substantial overlap.").

     Finally, the Court must address the similarity of
the issues between these two Actions.   See Nat'l Union
Fire Ins. Co. of Pittsburgh, PA. v. Payless Shoesource,
Inc., No C-11-1892 EMC, 2012 WL 3277222, at *3 (N.D.
Cal. Aug. 9, 2012) ("[T]he requirement that the issues
in both actions be 'substantially similar' is satisfied
even where different claims are advanced in each
action, so long as the 'key dispute' in each action is

the same."). Here, the crux of Defendant's complaint
in the First Action is that Okularity submitted
fraudulent DMCA notices to Instagram on behalf of
Plaintiffs. See Ex. A in Supp. of First Motion to
Dismiss Reply ("First Action FAC") ¶¶ 29, 37-43, ECF
No. 21-1. Specifically, Defendant's first cause of
action for violations of the DMCA alleges that
Plaintiffs, collectively with Okularity, and Nicolini,
"willfully, knowingly, and materially" made
misrepresentations to Instagram stating that
Defendant's images were infringing on intellectual
property rights owned by Plaintiffs. Id. ¶ 37.

One of the core questions in the instant Action is
whether Defendant materially misrepresented in its
counter-notices under the DMCA. Importantly, both
Actions require considering whether Defendant infringed
Plaintiffs' works, whether Plaintiffs' DMCA notices
issued through Okularity were proper, and whether
Defendant's counter-notices were proper. The parties'
claims in these Actions are effectively two versions of
the same events: Defendant's posting of certain
photographs on Instagram that Plaintiffs claim
infringed upon their copyrights; Plaintiffs, through
Okularity and Nicolini, issuing take-down notices to
Instagram; Instagram's disabling of *Paper*'s Instagram
account; and Defendant issuing counter-notices to
Instagram. Given that the parties and issues are
substantially similar, the Court finds that "in the

name of judicial efficiency one court should decide these issues as having two courts determine whether each party's conduct [as it pertains to the alleged copyright infringement and related DMCA notices] is duplicative and judicially inefficient." Global Music Rights, LLC. v. Radio Music License Comm., Inc., CV 16-9051-BRO (ASx), 2017 WL 3449606, at *7 (C.D. Cal. April 7, 2017).

In evaluating the first-to-file considerations, the Court finds that dismissal of the instant Action under the first-to-file rule is appropriate.  See Gatlin, 2018 WL 10161198, at *3 (finding dismissal of plaintiff's claim appropriate where "in order to achieve sound judicial administration and avoid duplicative litigation" court applied the first-to-file doctrine to cases in the same district before different judges); Blanchard Training & Dev. v. Leadership Studies, Inc., 15cv2142 WQH (KSC), 2016 WL 773227, at *5 (S.D. Cal. Feb. 29, 2016) (dismissing second filed action under first-to-file rule where parties were identical and resolution of first action had capacity to resolve the second action).

As such, the Court **GRANTS** Defendant's Motion on this basis.[3]

_____

[3] Because the Court finds dismissal of this Action is appropriate under the first-to-file rule, it need not address whether dismissal is also appropriate under Rule 13(a).

### III. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendant's Motion **without prejudice** to allow Plaintiffs the opportunity to file their claims if and when the opportunity arises for responsive pleading in the First Action.

**IT IS SO ORDERED.**

DATED: October 1, 2020          /s/ Ronald S.W. Lew

                               **HONORABLE RONALD S.W. LEW**
                               Senior U.S. District Judge